**HAMILTON NAT. BANK OF WASHING-
TON v. DISTRICT OF COLUMBIA
and seven other cases.**

Nos. 9833–9840.

United States Court of Appeals
District of Columbia Circuit.

Argued March 23, 1949.

Decided May 31, 1949.

EDGERTON, Circuit Judge, dissenting in part.

Mr. Roger J. Whiteford, Washington, D.C., with whom Mr. Philip S. Peyser, Washington, D.C., was on the brief, for petitioner in No. 9833.

Messrs. Harry L. Walker, Assistant Corporation Counsel, District of Columbia, and George C. Updegraff, Assistant Corporation Counsel, Washington, D.C., with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D.C., were on the brief, for respondent in No. 9833 and for petitioner in Nos. 9834-9840, inclusive.

Mr. William F. Kelly, Washington, D.C., with whom Mr. P. J. J. Nicolaides, Washington, D.C., was on the brief for respondent in Nos. 9835 and 9836.

Mr. Samuel O. Clark, Jr., Washington, D.C., with whom Mr. W. V. T. Justis, Washington, D.C., was on the brief, for respondents in Nos. 9837 and 9838.

Mr. George E. C. Hayes, Washington, D.C., for respondent in No. 9839.

Mr. Jo. V. Morgan, Washington, D.C., for respondent in No. 9834.

Mr. O. R. McGuire, Jr., Washington, D. C., with whom Messrs. Nelson T. Hartson and James C. Rogers, Washington, D. C., were on the brief, for respondent in No. 9840.

Before EDGERTON and WILBUR K. MILLER, Circuit Judges, and HARRY E. WATKINS, District Judge, sitting by designation.

WILBUR K. MILLER, Circuit Judge.

These eight cases differ slightly as to facts, but all involve the construction of Title 47, §§ 1701 and 1703, of the District of Columbia Code,[1] which have to do with the taxation of banks and trust companies. The cases were argued together and will be disposed of in a single opinion.

[1] "§ 47—1701 [20:760]. Banks, gas, electric-lighting, and telephone companies. "Each national bank as the trustee for its stockholders, through its president or cashier, and all other incorporated banks and trust companies in the District of Columbia, through their presidents or cashiers, and all gas, electric lighting, and telephone companies, through their proper officers, shall make affidavit to the board of personal-tax appraisers on or before the 1st day of August each year as to the amount of its or their gross earnings or gross receipts, as the case may be, for the preceding year ending the 30th day of June, and each national bank and all other incorporated banks and trust companies respectively shall pay to the collector of taxes of the District of Columbia per annum 6 per centum on such gross earnings and each gas company, electric-lighting company, and telephone company shall pay to the collector of taxes of the District of Columbia per annum 4 per centum on such gross receipts, from the sale of public utility commodities and services within the District of Columbia. And in addition thereto the real estate owned by each national or other incorporated bank, and each trust, gas, electric-lighting, and telephone company in the District of Columbia shall be taxed as other real estate in said District: Provided, That street railroad companies shall pay 3 per centum per annum on their gross receipts and other taxes as provided by existing law, and insurance companies shall continue to pay the 2 per centum on premium receipts as provided by existing law. Each gas, electric-lighting, telephone and street railroad company shall pay, in addition to the tax herein mentioned, the corporate income tax imposed by sections 47-1501 to 47-1543, and the personal property tax on merchandise stock in trade. (July 1, 1902, 32 Stat. 619, ch. 1352, § 6, par. 5; April 28, 1904, 33 Stat. 564, ch. 1815, § 2; July 26, 1939, 53 Stat. 1107, ch. 367, title IV, § 2.)

\* \* \* \* \* \*

"§ 47—1703 [20-762]. Savings banks. "Savings banks having no capital stock and paying interest to their depositors shall, through their president or cashier, make affidavit to the board of personal-tax appraisers on or before the 1st day of August in each year as to the amount of their surplus and undivided profits, and shall pay to the collector of taxes of the District of Columbia a sum equal to one and one-half per centum on the amount of their surplus and undivided profits on the 30th day of June preceding.

"Incorporated savings banks paying interest to their depositors shall, through their president or cashier, make report under oath to the board of personal-tax appraisers on or before the 1st day of August in each year as to the amount of their gross earnings, less the amount paid as interest to their depositors for the preceding year ending June 30th, and shall pay thereon to the collector of taxes of the District of Columbia four per centum per annum. (July 1, 1902, 32 Stat. 619, ch. 1352, § 6, par. 7; Apr. 28, 1904, 33 Stat. 564, ch. 1815.)"

Section 1701, which was enacted by Congress in 1902, imposed in the District of Columbia a tax of six per cent of gross earnings upon "each national bank and all other incorporated banks and trust companies". The only other pertinent portion of the 1902 statute provided for a different method of taxing "savings banks having no capital stock and paying interest to their depositors", which is now the first paragraph of § 1703.

By an act of April 28, 1904, 33 Stat. 564, ch. 1815, Congress added to the District bank tax statutes what is now the second paragraph of § 1703. It provides that "incorporated savings banks paying interest to their depositors" shall pay upon their gross earnings, less the sums paid as interest to their depositors, an annual tax of four per cent. This amendment had the obvious effect of giving to "incorporated savings banks paying interest to their depositors" more favorable tax treatment than that which § 1701 gives to "each national bank and all other incorporated banks and trust companies".

The several banks of the District of Columbia include those incorporated under the federal bank acts, which are commonly known as national banks, and those incorporated under the laws of the District of Columbia or of one of the states, which are familiarly known as state banks. Each of the banks concerned here, whether state or national, conducts a commercial banking business and also has substantial savings deposits upon which it pays interest. All are under the regulatory control of the Comptroller of the Currency.[2]

For many years the taxing authorities of the District of Columbia consistently have classified state banks as "incorporated savings banks paying interest to their depositors" under the second paragraph of § 1703, and have collected taxes from them under the more favorable rate prescribed therein; but they have been equally consistent in classifying national banks for taxation under § 1701 and in imposing upon them the higher rate and less favorable treatment prescribed by that section.

In such circumstances the Hamilton National Bank, on November 30, 1944, filed with the Board of Tax Appeals for the District of Columbia a petition for a reduction of the taxes based upon its assessment of September 1, 1944, complaining that the Assessor had refused to permit it to deduct from its gross earnings a large sum paid as interest to its savings depositors, before applying thereto the tax rate fixed by the statute. The Board of Tax Appeals affirmed the Assessor, whereupon a petition for review was filed with this court, which was disposed of by our opinion in Hamilton National Bank v. District of Columbia, 1946, 81 U.S.App.D.C. 200, 156 F.2d 843. We held that the simple ascertainment of whether a bank has a national charter or a state charter is not a proper method of determining whether the bank is or is not an incorporated savings bank since, as far as savings deposits are concerned, there is no difference between national banks and state banks. In the course of the opinion we said, 81 U.S.App. D.C. at page 203, 156 F.2d at page 846: "* * * We do not think that an administrative officer can restrict a statutory term such as 'incorporated savings bank' by a definition having no relation to savings deposits or accounts. He cannot eliminate, by administrative definition, from the statutory provision some institutions identical in all respects related to savings deposits with institutions included in his definition. His attempt to do so is invalid as not in harmony with the statute."

We also noted that, historically, there is no incongruity in the District of Columbia between a savings bank and a national bank. The decision of the Board of Tax Appeals was reversed and the case was remanded "* * * with instructions to cancel the present assessment unless the tax Assessor, upon a reexamination of the entire subject of taxing banks under these statutes, removes the discriminations presently existing, in which latter event the validity of his further proposals may be considered."

After remand, the Assessor of the District of Columbia re-examined the status

---

[2] Title 26, § 101, District of Columbia Code (1940).

of the several banks with respect to taxation and concluded there is no bank in the District properly classifiable as an "incorporated savings bank paying interest to its depositors", within the purview of the second paragraph of § 1703. He proceeded accordingly to apply to all banks, both state and national, the higher rate of taxation provided for by § 1701. This action was promptly appealed by the state-chartered banks to the Board of Tax Appeals, which held in effect that the appealing banks are properly taxable under § 1703, due to the long-continued administrative practice of treating as "incorporated savings banks paying interest to their depositors" all state-chartered banks having interest-bearing savings deposits substantial in amount, even though such banks do not confine their activities to receiving savings deposits, but also receive commercial deposits and conduct a general banking business.

The petitions for review of the Board's decisions with respect to the state banks, filed by the District of Columbia, are the captioned cases numbered 9834 to 9840, inclusive.

After the Board of Tax Appeals had held, as above shown, that the state banks here involved are incorporated savings banks taxable under § 1703, the Hamilton National Bank endeavored to induce the Board to classify it for taxation in the same manner. The Board determined, however, after hearing evidence and argument, that Hamilton National is not "an incorporated savings bank paying interest to its depositors" within the meaning of § 1703, and held it taxable under § 1701. Thereupon Hamilton National filed its petition for review, which is No. 9833 among the eight cases captioned above.

Under the rulings of the Board of Tax Appeals which are now before us, the assessing officials of the District of Columbia are required to classify state banks as incorporated savings banks taxable at the favorable rate of § 1703, and are required to classify national banks as not being incorporated savings banks and therefore taxable at the higher rate of § 1701.

The Board avows it ordered the state banks taxed as incorporated savings banks "upon consideration of the character of business done by the appealing banks, and the legislative and administrative history of the applicable statutes," and not because they had state charters instead of national charters. From this the Board reasons that, as the state banks are not taxed at the lower rate merely because they have state charters, the unlawful discrimination against national banks which we condemned in our first Hamilton National opinion has been removed.

Measured by the standards used by the Board in concluding state banks are incorporated savings banks, national banks are seen to be of the same character. If it be conceded that the legislative history of the 1904 statute indicates a Congressional purpose at that time to tax commercial banks having state charters at the lower rate because of the nature of their business, i.e., because they received savings deposits, and a purpose to tax commercial banks having national charters at the higher rate because they did not then have savings departments, that particular reason for discrimination has long since ceased to exist. The record shows Hamilton National has substantial savings deposits, and it is common knowledge that other national banks also receive such deposits. Since the character of business done by national banks is identical with the character of business done by the state banks, and, since the statute's legislative history reveals no present reason for applying different tax rates to the two kinds of banking institutions, those two standards used by the Board in classifying state banks under § 1703 apply equally to federally-chartered banks.

The third test employed by the Board of Tax Appeals—the administrative history of the statutes—simply shows District authorities have for many years taxed state banks at one rate and national banks at another rate. But the administrative history shows no valid reason for the distinction. No matter how long continued, discriminatory interpretation of taxing statutes can-

not ripen into rigidity so as to bar a court's power to correct it.

In sum, the Board of Tax Appeals ordered state banks to be taxed under § 1703 after, as the Board said, " * * * consideration of the character of business done by the appealing banks, and the legislative and administrative history of the applicable statutes". If that action of the Board was correct, its consideration of the same matters should have led to the same conclusion with respect to the taxation of national banks.

Despite all this, under the Board's rulings which are before us for review, the actual situation of the state and national banks with respect to taxation is exactly as it was before we wrote our opinion in Hamilton National Bank v. District of Columbia; that is to say, national banks are being taxed under § 1701 and state banks are being taxed under the second paragraph of § 1703. The Board of Tax Appeals is incorrect in supposing that the discrimination we spoke of in the former Hamilton National Bank opinion has been removed. It still exists under the Board's rulings, and it is still based solely on the fact that the national banks have national charters.

A graphic illustration of the discrimination to which we refer is found in comparing, as of December 31, 1944, two of the District banks,—the Second National Bank and the Security Savings and Commercial Bank. The two institutions are practically identical: their capital structures are about the same, their total deposits are almost equal, their volumes of commercial deposits and savings deposits bear approximately the same relation; the single difference is that one is a national bank and the other is a state bank. One is near 13th and G Streets, N.W., and the other is at 9th and G Streets, N.W. Almost side by side they conduct practically identical businesses under similar conditions. Under the Board's rulings the Second National would pay six per cent on its gross earnings; the Security Savings would pay four per cent on its gross earnings after deducting the interest paid to its savings depositors. Congress did not say for this to be done. It would result

only because the taxing authorities classify one as a savings bank and refuse so to classify the other. They do so only because one bank has a national charter and the other has a state charter. That is exactly the thing we said in the Hamilton National Bank case cannot legally be done, no matter how long it has been going on.

As heretofore noted, after the first Hamilton National case was remanded, the Assessor decided there is no bank or trust company in the District of Columbia classifiable as "an incorporated savings bank paying interest to its depositors". The Assessor was correct only if a savings bank be thought of in the traditional sense of the term as an institution which confines its business to interest-bearing savings deposits. But, in the light of the legislative history of the 1904 amendment to § 1703, it is not demonstrably true that Congress intended so to restrict the term. A legislative intent not to apply the amendment solely to strictly savings banks is indicated because (a) there were no such savings banks in the District in 1904, and (b) the banks at whose instance the amendment was adopted were engaged in commercial banking as well as in receiving savings deposits.

The administrative interpretation of the 1904 amendment as applicable to commercial banks with substantial savings departments, which began immediately and has since continued, was therefore not without some statutory basis, or at least was not in the teeth of the amendment. Prolonged administrative construction, if not illegal or unconstitutional, is given great weight in interpreting statutes. In our opinion the Board of Tax Appeals was justified in holding the state-chartered banks to be taxable under § 1703 as incorporated savings banks. The orders of the Board of Tax appeals in the cases numbered 9834 to 9840, inclusive, are affirmed.

But we also hold that the Hamilton National Bank is, for the same reasons, taxable under § 1703 and not under § 1701. It is an incorporated savings bank under any and all tests pursuant to which that status is accorded to state banks. The character of its business, and its methods

of conducting it, are identical with those of the state institutions. Although in 1904, national banks did not receive savings deposits and so were perhaps properly excluded by assessing officials from the category of incorporated savings banks, such exclusion is not now justifiable because the reason for it no longer exists. The continuance of such administrative action results in unconstitutional discrimination.

It is argued, however, that Congress has power to discriminate against national banks in enacting bank tax legislation for the District of Columbia, and that it did so in §§ 1701 and 1703. It is said national banks are taxable only under § 1701 because the words "national banks" occur in that section only, and therefore no administrative official has power to classify them under § 1703.

That the argument is fallacious is easily demonstrated, for it is the Board of Tax Appeals and not the Congress which has discriminated against national banks. As we have seen, Congress imposed, in 1902, in the District of Columbia a tax of six per cent of gross earnings upon "each national bank and all other incorporated banks and trust companies". The only other provision was for a different method of taxing "savings banks having no capital stock and paying interest to their depositors". The state-chartered banks involved here have capital stock, so in 1902 they were not under the savings bank taxing statute just mentioned; yet they were incorporated banks and so were taxable under the section which taxed "all other incorporated banks and trust companies" at the same rate which was applied to national banks. Plainly the state banks were mentioned as such in the 1902 Act, now § 1701, just as national banks were mentioned and, had the 1904 amendment not been enacted, state banks would have been subjected to the tax of § 1701 along with national banks.

Congress has said nothing more, except that in 1904 it provided for a lower rate of taxation on "incorporated savings banks paying interest to their depositors". The 1904 amendment does not say that only a state-chartered bank can be considered to be a "savings bank." Classification of state banks as "savings banks" has been done only administratively. In the Hamilton National Bank case we said, in effect, to the District taxing authorities, "You cannot classify state banks as savings banks and, at the same time, refuse so to classify national banks simply because they have national charters." Pursuant to that ruling, the Board of Tax Appeals proceeded to classify the state banks as saving banks, saying it did so not because they had state charters but because they had substantial savings departments. Yet the Board refused so to classify a national bank which had an equally substantial savings department. This discrimination cannot be justified by saying the statutes require it, because, as we have shown, the legislative language is not susceptible of that interpretation; Congress has not separately and expressly classified national banks on the one hand and state banks on the other. In the absence of clear and unambiguous legislation to that effect, we should not infer such intent from legislative history or administrative interpretation, especially, where to do so would create such a flagrant discrimination.

■ Moreover, to construe §§ 1701 and 1703 as manifesting a Congressional intention to give preferential tax treatment to state banks over national banks substantially identical in every particular would be at war with the clear Congressional purpose expressed in § 5219 of the Revised Statutes, 12 U.S.C.A. § 548, where it is carefully provided that no state may tax a national bank's earnings at a higher rate than it taxes such earnings of state banks. It is incredible that in legislating for the local taxation of banks in the District, Congress would discriminate against national banks in exactly the fashion in which it has been at pains to forbid state legislatures to discriminate against them.

■ Even if the language of the two Code provisions involved permitted the interpretation which the Board has given it, such a construction which obviously results in oppressive discrimination against national banks would render the two sec-

tions unconstitutional, for it denies to national banks the due process guaranteed by the Fifth Amendment and the equal protection of the laws implied therein for the benefit of the inhabitants of the District of Columbia.[3]

■ In spite of the fact that under the settled rule equal protection of the laws is not afforded by the Fifth Amendment, it is true, and ought to be true, that "The Fifth Amendment as applied to the District of Columbia implies equal protection of the laws." Sims v. Rives, 1936, 66 App.D.C. 24, 84 F.2d 871, 878; Lappin v. District of Columbia, 1903, 22 App.D.C. 68. We say this is true because this court so held in the two cases just cited. We say it ought to be true because the due process of the Fifth Amendment should include or imply for the inhabitants of the District of Columbia equal protection of the laws enacted by Congress as the local legislature of the District. It is unthinkable that Congress, enacting statutes applicable only in this jurisdiction, does not violate the due process clause of the Fifth Amendment if it denies the people of this District equal protection of the laws, just as a state legislature violates the "equal protection" clause of the Fourteenth Amendment if it does the same thing.

■ So long as the taxing authorities of the District of Columbia classify as "incorporated savings banks" the state-chartered commercial banking institutions which have interest-bearing savings deposits, and impose upon them the form of taxation set up in § 1703, the national banks in the District which have interest-bearing savings deposits must be classified and taxed in the same manner. The order of the Board of Tax Appeals in the Hamilton National Bank case will be set aside.

Case No. 9833 reversed;

Cases Nos. 9834-40, affirmed.

EDGERTON, Circuit Judge (dissenting in No. 9833).

I think the statute and its history show that Congress intends state banks that do a savings business to be taxed under § 1703 although they also do a commercial business, but intends national banks, which are expressly named in § 1701, to be taxed there although they also do a savings business.

The power of Congress to tax state banks and national banks differently seems to me as plain as the power to tax corporations and partnerships differently. And even if the constitutionality of the statute were not plain it could not now be drawn in question in this court of the United States, since there has been no compliance with Title 28, U.SC.A. § 2403, which requires that "In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality." I think the decisions of the Board of Tax Appeals in all of these cases should be affirmed.

---

[3] Judge Edgerton's theory, expressed in his dissenting opinion, that 28 U.S.C.A. § 2403 prevents us from making the observation that his construction of the statutes under consideration would render them unconstitutional, does not seem to us to be well founded. These cases came to us, not from the United States District Court, but from the Board of Tax Appeals of the District of Columbia. It is true, moreover, that the unconstitutionality of the discriminatory application of the statutes was not suggested in the hearing before the Board; but had it been argued there, § 2403 would have had no application. The Code provisions here involved apply only in the District of Columbia and concern a matter of local taxation in which the Attorney General has no interest whatever. Smoot Sand & Gravel Corporation v. District of Columbia, 1949, 84 U.S.App.D. C. 367, 174 F.2d 505, squarely decided the constitutionality of the District of Columbia tax there involved. It is the latest of many such cases in this court from the District Board of Tax Appeals, in none of which has the application of § 2403 been suggested.