**STANLEY COMPANY OF AMERICA et al., Appellants**

v.

**Walter N. TOBRINER et al., Commissioners of the District of Columbia, et al., Appellees.**

**No. 16482.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 16, 1961.

Decided Dec. 21, 1961.

Petition for Rehearing Before the Division Denied Jan. 12, 1962.

Circuit Judge Bastian would grant the petition.

Petition for Rehearing En Banc Denied En Banc Jan. 12, 1962.

Chief Judge Miller and Circuit Judge Bastian would grant the petition.

Mr. Louis Rabil, Washington, D. C., with whom Mr. Douglas A. Clark, Wash-ington, D. C., was on the brief, for appellants.

Mr. John R. Hess, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Chester H. Gray, Corporation Counsel, Milton D. Korman, Principal Asst. Corporation Counsel, and Hubert B. Pair, Asst. Corporation Counsel, were on the brief, for appellees.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

FAHY, Circuit Judge.

■ This appeal is from a judgment of the District Court sustaining the authority of the Commission of Fine Arts with respect to the repair and alteration of part of the building at the northeast corner of the intersection of Thirteenth and E Streets, Northwest, in the District of Columbia. The suit was filed by the owners and lessees of the building against the Commissioners of the District of Columbia and the Director of the Department of Licenses and Inspection. Plaintiffs had applied for a permit to make the repairs and alterations. The Commissioners referred the application to the Commission of Fine Arts, which disapproved it in several respects. This, and this alone, caused the Commissioners to reject the application. The suit was then filed to require issuance of the permit. Plaintiffs' sole contention is that the location of the building was outside the area over which the Commission of Fine Arts had jurisdiction.

The Commission's authority is derived from section 1 of the Shipstead-Luce Act[1] of May 16, 1930, which reads in pertinent part as follows:

"In view of the provisions of the Constitution respecting the establishment of the seat of the National Government, the duties it imposed upon Congress in connection therewith, and the solicitude shown and the efforts exerted by President Washington in the planning and de-

1. 46 Stat. 366 (1930), as amended, 40 U.S.C.A. § 121 (1958), 40 U.S.C.A. § 121. And see 5 D.C.Code § 410 (1961).

velopment of the Capital City, it is hereby declared that such development should proceed along the lines of good order, good taste, and with due regard to the public interests involved, and a reasonable degree of control should be exercised over the architecture of private or semipublic buildings adjacent to public buildings and grounds of major importance. To this end, hereafter when application is made for permit for the erection or alteration of any building, any portion of which is to front or abut upon * * * the portion of Pennsylvania Avenue extending from the Capitol to the White House * * * or abutting upon any street bordering any of said grounds or parks, the plans therefor, so far as they relate to height and appearance, color, and texture of the materials of exterior construction, shall be submitted by the Commissioners of the District of Columbia to the Commission of Fine Arts; and the said Commission shall report promptly to said Commissioners its recommendations, including such changes, if any, as in its judgment are necessary to prevent reasonably avoidable impairment of the public values belonging to such public building or park; and said Commissioners shall take such action as shall, in their judgment, effect reasonable compliance with such recommendation * * *."

Section 2 of the Act provides that the Commissioners,

"in consultation with the National Capital Planning Commission, shall prepare plats defining the areas within which application for building permits shall be submitted to the Commission of Fine Arts for its recommendations." [2]

The question is whether the corner structure to which we have referred comes within the following language of section 1 of the Act,

"any portion of [a building] which is to front or abut upon * * * the portion of Pennsylvania Avenue extending from the Capitol to the White House * * *."

The corner does not abut upon Pennsylvania Avenue, for between the corner and the Avenue lies E Street and also an improved building lot on the east side of Thirteenth Street between E Street and the Avenue. Nevertheless, as the Avenue passes beyond Thirteenth Street in a somewhat northwesterly direction there is a public park known as Pulaski Park. It is triangular in shape, bounded on the east by Thirteenth Street, on the southerly side by the Avenue, and on the north by E Street. The Park comes toward a point at its western end. Except where a monument in the Park slightly interferes the corner structure with which we are concerned is unobstructedly to be seen from the Avenue across Pulaski Park and the intersection of Thirteenth and E Streets.

In accordance with the provisions of section 2 of the Shipstead-Luce Act, above set forth, a plat was prepared and approved by the Commissioners and by the National Capital Park and Planning Commission [3] on August 5, 1930. This plat was revised in 1937 and again in 1939, and each time was similarly approved. As originally prepared, in each revision, and to the present time, the corner in question has been included on the plats as within the boundaries of the area under the authority of the Commission of Fine Arts. For thirty years there has thus remained a consistent administrative delineation of the area encompassed by the Act, made by the public officials specially entrusted by Congress with responsibility in the matter. This interpretation of "to front" on the Avenue so as to include the corner in question should not be disturbed by the courts

2. 5 D.C.Code § 411 (1961).

3. The National Capital Planning Commission is the successor of the National Capital Parks and Planning Commission. 66 Stat. 790 (1952), 40 U.S.C. § 71h (1958), 40 U.S.C.A. § 71h.

unless the Act, reasonably construed, so requires. California Co. v. Udall, 111 U.S.App.D.C. ——, 296 F.2d 384. And see Federal Trade Comm. v. Mandel Bros., 359 U.S. 385, 391, 79 S.Ct. 818, 3 L.Ed.2d 893; Alan Wood Steel Co. v. Watson, 150 F.Supp. 861, 863 (D.D.C.1957). We do not think it does so require.

Different meanings are attributable to the verb "front." Webster's New International Dictionary, Second Edition, includes among its meanings, "to face or look toward; to have the front toward * * * as the house *fronts* the street." Obviously a building may front a street without being exactly on or abutting upon the street.

■ The purpose of the Act conferring authority upon the Commission of Fine Arts is to enhance and to preserve the beauty and aesthetic values of specified parts of the Nation's Capital, including Pennsylvania Avenue between the Capitol and the White House. An unsightly building may interfere with this purpose though it does not touch the Avenue. We do not mean to say that the area of the Commission's authority accordingly extends to all buildings that can be seen from the specified portion of the Avenue. The language of the Act does not permit this. But in determining whether a particular building fronts on the Avenue its actual location on the Avenue is not the sole test. We gain added support for this position by the language of the Act which refers to the necessity of exercising a reasonable degree of control over the architecture of buildings "adjacent" to public buildings and grounds of major importance.

When the corner in question is considered in its physical relationship to the Avenue and to Pulaski Park, and so considered is found to be clearly in the line of a well nigh unobstructed view from the Avenue as well as in close proximity thereto, the contemporaneous, long adhered to and publicly recorded plats marking the corner as subject to the jurisdiction of the Commission, consti-

tute such a reasonable official interpretation of the area of the Commission's authority as to preclude judicial repudiation. United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345. And see Hamilton Nat. Bank of Wash. v. District of Columbia, 85 U.S.App.D.C. 109, 113, 176 F.2d 624, 628, cert. denied 338 U.S. 891, 70 S. Ct. 241, 94 L.Ed. 547.

The cases cited by the appellant in which the expression "fronts" has been used somewhat synonymously with "abuts" are not very helpful. They have not been concerned with a problem similar to that which gave rise to the Commission of Fine Arts.

We agree with the conclusion reached by District Judge Walsh in granting judgment for the defendants.

Affirmed.

BASTIAN, Circuit Judge (dissenting).

As the general factual background of the instant appeal is delineated in the majority opinion, I shall merely emphasize those topographical features of the case which lead me to dissent.

The pertinent sides of appellant's building face due south and west, respectively, the southward-looking portion being bounded by E Street, N. W., on the south, the westward-looking portion being bounded by Thirteenth Street, N. W., on the west. Directly across E Street, and standing squarely between appellant's building and Pennsylvania Avenue, is a large, new, modern office building; directly across Thirteenth Street is another commercial structure housing various business enterprises.

On the southwest corner of E and Thirteenth Streets begins Pulaski Park, a triangular shaped public park, extending along both E and Thirteenth Streets and having Pennsylvania Avenue as its southwesternmost boundary. Pulaski Park is not included as a part of the Shipstead-Luce Act.

It thus appears that a rather substantial corridor[1] of property belonging to others intervenes between appellant's building and Pennsylvania Avenue. Nevertheless, a majority of the court holds appellant's building to fall within the ambit of the statutory language "to front or abut upon * * * Pennsylvania Avenue * * *."[2] The majority seems to hold, as indeed it must, that the property does not "abut" upon Pennsylvania Avenue; their decision is based upon the use of the word "front"[3] as assisted by the word "adjacent" in the preamble of the Act. I cannot agree.

Appellees advise us to pay due respect to the interpretation given to the statute by the administrative authorities charged with the task of implementing it.[4] I agree. But it is also true that an incorrect interpretation cannot become lawful on the basis of its longevity. I am told by the majority that "[t]his interpretation of 'to front' on the Avenue so as to include the corner in question should not be disturbed by the courts unless the Act, reasonably construed, so requires." I think the Act, reasonably construed, requires granting appellant the requested relief. The words of the Act are simple enough: "any portion of which is to front or abut upon * * * Pennsylvania Avenue * * *."

Nor, in my opinion, does the word "adjacent" lend solidity to the majority opinion; it is found in the preamble and is almost immediately followed by the more constricting words quoted from the Act. If Congress intended the Act to embrace buildings *visible* from Pennsylvania Avenue, I do not think it startling to assume that it would have said as much; however, I do think it startling that the words "to front or abut upon," words having a rather limited meaning in law,[5] were deliberately chosen by Congress in codification of such an intention.

But even assuming, *arguendo*, that the word "adjacent" may be relied upon to expand the Act's coverage, nevertheless I think the extent to which it can be so employed must be severely circumscribed in view of the restrictive words "to front or abut upon" contained in the enacting clause.[6] Interpreting "adjacent" in this fashion, I think it unreasonable to apply it so as to bring appellant's building within the purview of the Act. The building is situated in such a way that each pertinent side directly faces another building on the opposite side of the street. In relation to Pennsylvania Avenue, appellant's building is observable, from a distance and across a public park, as an oblique corner structure

---

1. At its *closest* point appellant's building is roughly two hundred and fifty feet from Pennsylvania Avenue.

2. It is, of course, possible to see appellant's building from Pennsylvania Avenue; it is also possible to see other buildings up Thirteenth Street as far as F Street.

3. The word "front" has been defined, among other things, as "the place or position before a person or thing; as it's right in front of you; the land bordering a lake, ocean, street, etc."

   The word "frontage" has been defined as "the front part of a building; the direction toward which this faces; exposure; the land between the front edge of a building and the street; the front boundary line of a lot facing a street, the length of this line; land bordering a street, river, lake, etc."

The quoted definitions are from Webster's "New World Dictionary."

As "front" is also synonymous with "face" I think the following words from Hamlet, Act III, are apt: "God has given you one face, and you make yourselves another."

4. Section 5–411 D.C.Code (1961).

5. Rombauer v. Compton Heights Christian Church, 328 Mo. 1, 40 S.W.2d 545; Barniak v. Grossman, 141 W.Va. 760, 93 S.E.2d 49; City of Wilburton v. McConnell, 119 Okl. 242, 249 P. 708; Crane v. French, 50 Mo.App. 367.

6. If the word "adjacent" is given operative effect, its expansion should be measured, at least in my opinion, by a yardstick to preserve and not proscribe private property rights.

fronting on two disparate, metropolitan thoroughfares, E Street and Thirteenth Street.

The holding that appellant's building fronts upon Pennsylvania Avenue forms a basis for further limiting the individual's right to the use and enjoyment of his own property,[7] and that use and enjoyment should not be limited or taken from him except by clear and specific legal authority.

7. Staley v. Mears, 13 Ill.App.2d 451, 142 N.E.2d 835.