**Albert LLOYD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 18049.**

United States Court of Appeals District of Columbia Circuit.

Argued May 27, 1964.

Decided July 3, 1964.

Rehearing En Banc Denied Nov. 6, 1964.

Certiorari Denied June 7, 1965.

See 85 S.Ct. 1809.

Bazelon, Chief Judge, and Fahy, Washington and Wright, JJ., would grant the petition for rehearing en banc.

Messrs. Morris Kanfer (appointed by this court), Washington, D. C., and Alvin O. West, Washington, D. C., for appellant.

Mr. Alan Kay, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and William H. Collins, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, FAHY and BURGER, Circuit Judges.

Judgment

PER CURIAM.

*This cause* came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was argued by counsel.

*On consideration whereof* It is ordered and adjudged by this Court that the judgment ...... of the District Court appeal-

ed from in this cause be, and it is hereby, affirmed.

FAHY, Circuit Judge (dissenting):

The intervention of the trial judge in the examination of the witnesses was so excessive and indicated so unfavorable an attitude toward the defense of insanity, as to which the evidence was in substantial conflict, that I would reverse and remand for a new trial, as this court did for similar reasons in Jackson v. United States, 117 U.S.App.D.C. 325, 329 F.2d 893 (1964).

Before BAZELON, Chief Judge, and FAHY, WASHINGTON, DANAHER, BASTIAN, BURGER, WRIGHT, and McGOWAN, Circuit Judges, in Chambers.[*]

ORDER

PER CURIAM.

On consideration of appellant's petition for rehearing *en banc*, it is

ORDERED by the COURTS, *en banc*, that appellant's petition is denied.

BAZELON, Chief Judge, and FAHY, WASHINGTON and WRIGHT, Circuit Judges, would grant the petition for rehearing *en banc*.

BAZELON, Chief Judge (dissenting):

Appellant, who has been a narcotic addict for most of his adult life, was arrested after police officers observed him purchase narcotics "on the street" in the vicinity of DuPont Circle. The amount of narcotics he purchased was no more than would be consumed by many addicts in a period of one or two days. He was charged with violation of the Harrison Act. At his trial, the only defense offered was insanity. He was convicted and sentenced to the minimum permissible term for a second offender, ten years. On appeal, this court affirmed by order, Judge Fahy dissenting. Now appellant petitions for rehearing of his appeal *en banc*.

[*] Senior Circuit Judge Wilbur K. Miller, prior to his retirement on October 15, 1964, voted to deny the appellant's petition for rehearing *en banc*.

This petition should be granted for two reasons: (1) The trial judge's interference with jury consideration of the insanity defense (*Cf.* Naples v. United States, 113 U.S.App.D.C. 281, 289–294, 307 F.2d 618, 626–631 (1962)). This was the basis for Judge Fahy's dissent from the judgment of affirmance by the division. (2) The presence of substantial constitutional questions which have been presented to this court with increasing frequency.[1] These questions are (a) whether punishment of an addict such as he, whose purchase and possession of narcotic drugs is explained entirely by his personal need for repeated dosages of them, is cruel and unusual punishment, Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); and (b) whether in a case where the evidence shows only purchase and possession of drugs in an amount explained by an addict's daily needs, it is a denial of equal protection to prosecute him under the more stringent Federal statutes (intended to deal with traffickers) rather than municipal statutes dealing directly with possession. Hamilton Nat'l Bank of Washington v. District of Columbia, 85 U.S.App.D.C. 109, 176 F.2d 624 (1949).

(1) The trial judge interrupted psychiatric testimony 136 times with questions, and 9 times with comments; all but an insignificant number of these interruptions occurred during testimony for the defense. Almost without exception these questions would invoke a response unfavorable to the use of the defense of insanity in narcotics cases, and created the impression that the judge had little use for the defense.[2] Thus, he suggested to the jury, through questions, that because St. Elizabeths does not admit addicts, addiction cannot be a mental disease. In a ·similar manner, he suggested that the only mental diseases which should ·be considered as excusing responsibility are those which a layman considers mental disease, or those which he would consider "insanity." The prosecution was encouraged to bring out the qualifications of its expert witnesses in much detail. But the judge would not allow the defense to spell out the qualifications of its star witness, Dr. Overholser, and drew attention to the junior sta-

1. These issues are raised by at least three cases now pending before the court: Castle v. United States, No. 17894; Hutcherson v. United States, No. 18375; and the instant case.

2. For example, during the cross-examination of Dr. Hamman, a defense witness, the following occurred:

"A [I]f a normal individual for some reason had to take drugs or in an experimental situation took drugs to the point they became addicted, they would have an irresistible impulse to get more drugs unless they could bring themselves to go into a hospital. I think that they would be suffering from an abnormal mental condition. Their willpower would be shot—

"THE COURT: Is that sufficient to make it a mental disease?

"THE WITNESS: I would think so, Your Honor.

"THE COURT: Isn't it a physical craving?

"THE WITNESS: Well, I think it is a mental and physical craving. In other words, a person would show marked symptoms of anxiety as he was going through withdrawal.

"BY MR. COLLINS:

"Q Well, Doctor, now, *as His Honor has already indicated,* isn't drug addiction a physical problem and not a mental problem?

"A No, it is both." [Emphasis supplied.]

Another colloquy occurred during the cross-examination of Dr. Dobbs, a prosecution witness:

"THE COURT: Doctor, don't some people become addicted as a result of being invited by a friend who takes the drug and then they do it again and again and finally become addicted? Isn't that one of the ways in which people become addicted?

"THE WITNESS: One of the most frequent ways, judging from the histories patients have given me.

"THE COURT: If that is the history of the addiction in a particular person, it is not a symptom of any psychological or mental trouble, is it?

"THE WITNESS: It may initially be no more than a symptom of looking for kicks.

"THE COURT: Yes."

tus of other defense witnesses, both through questioning and in his charge. He refused to note in summarizing the evidence that all witnesses had agreed on the question of appellant's prolonged addiction and the compulsions to which such addiction gives rise. But he stressed their agreement about the absence of irrationality or bizarre behavior.[3] Since the testimony was very much in equipoise, it is impossible to say that this activity did not influence the verdict.

(2) (a) Robinson v. California held invalid, as inflicting cruel and unusual punishment, a California statute imposing criminal penalties upon the status of narcotic addiction. Six members of the Supreme Court joined in the following statement:

"It is unlikely that any State at this moment in history would attempt to make it a criminal offense for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease. A State might determine that the general health and welfare require that the victims of these and other human afflictions be dealt with by compulsory treatment, involving quarantine, confinement, or sequestration. But in the light of. contemporary human knowledge, a law which made a criminal offense of such a disease would doubtless be universally thought to be an infliction of cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. See State of Louisiana ex rel. Francis v. Resweber, 329 U.S. 459 [67 S.Ct. 374, 91 L.Ed. 422].

"We cannot but consider the statute before us as of the same category." [370 U.S. at 666–667, 82 S.Ct. at 1420.]

Whether this holding should be applied to prosecutions of addicts for purchase and possession of narcotics in quantities no greater than may be explained by their personal needs is for me a hard question. On the one hand, the *Robinson* opinion is replete with dicta affirming the right of the states to punish possession or actual use of narcotic drugs in unauthorized situations. On the other, I am not able to distinguish in any meaningful sense the punishment of an addict for being an addict and the punishment of an addict for buying and possessing the drugs his body compellingly craves. Certainly, *Robinson* introduced a cautionary note into the handling of "mere addicts" as distinct from traffickers. It may be that the availability of an insanity defense grounded in addiction is sufficient to avert what force the cruel and unusual punishment argument has.[4] That is, those persons whom it might be cruel and unusual to punish for their purchase and/or possession of narcotics are just those who are most likely to be successful in presenting the insanity defense. But the trial judge's interference with the presentation of that defense in this case then becomes all the more prejudicial. Although matters affecting the conduct of a trial may not ordinarily necessitate *en banc* consideration, the conduct in issue here is so linked with the constitutional questions raised by *Robinson* that such consideration is clearly appropriate.

(b) I find the issue of equal protection raised by appellant both difficult and disturbing. D.C.Code, § 33–402(a) makes criminal any unauthorized manufacture, *possession,* control, sale, prescription or dispensation of narcotic drugs. The penalties for violation are relatively slight: up to one year for first offenders and up to ten years for multiple offenders with opportunity for parole and

---

3. The judge's charge on the issue of responsibility is at Tr. Vol. I 102–09. His summary of the evidence on the issue appears at Tr. Vol. I 110–12.

4. Another means which might be considered for resolving this apparent conflict

would be a construction of the Federal statutes, in light of *Robinson,* to make proof by a defendant that he was an addict, who purchased and/or possessed narcotics solely for his own use, sufficient to explain possession under the Federal statutes.

probation. Generally applicable Federal statutes create a complex of crimes, two of which can be proved against "mere addicts," i. e., persons not apprehended selling drugs or otherwise facilitating traffic in them. 21 U.S.C. § 174 penalizes knowing importation, receipt, concealment, purchase, sale, or facilitation in drug traffic and states that evidence of possession, unless explained, is sufficient to support conviction; 26 U.S.C. § 4704 (a) punishes purchase, sale, dispensation or distribution of drugs, except in original stamped packages, and absence of stamps from drugs found in a person's possession authorizes conviction. Under these Federal statutes, a first offender receives 5–20 years; subsequent offenders are sentenced to 10–40 years without possibility of suspension of sentence or parole. The argument of appellant is that the alleged discretion of the United States attorney to prosecute him under either Federal *or* municipal statutes—irrespective of the fact that they are merely addicts, or that their arrest was brought about by municipal rather than Federal narcotic agents—is so broad as to create a problem of equal protection.

There is a respectable body of precedent which suggests that there are no equal protection problems here—that the crimes charged by the two sets of statutes, municipal and Federal, are different and that the defendant is not entitled to choose under which of the several statutes he has violated he will be prosecuted.[5] On the other hand, it is hard to deny that, given the special proof provisions of the Federal statutes (authorizing conviction on proof of unexplained possession alone), the two sets of statutes are functionally equivalent. Both punish unauthorized possession of narcotics. The wide disparity in sentencing rigor under the two sets of statutes raises serious questions whether the permissible bounds of prosecutorial discretion have not been exceeded.[6] What standards, if any, are applied in choosing between the statutes? Do these standards have a firm place in statute or administrative practice? Ar they constitutionally permissible? Should we find that there is an appearance of excessive prosecutorial discretion, it may be possible to discover solutions of less sweep than a declaration of unconstitutionality. For example, the provisions of the Federal statutes authorizing *conviction* on proof of mere unexplained possession do not purport to authorize *prosecution* on this narrow base. The crimes they define are crimes of action and trafficking.[7] Is there a requirement that to authorize prosecution under the Federal statutes,

5. *E.g.*, Clemons v. United States, 137 F. 2d 302 (4th Cir. 1943); *cf.* United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941). But see Berra v. United States, 351 U.S. 131, 135, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956) (dissenting opinion of Black, J.).

6. *E.g.*, State v. Cory, 204 Or. 235, 282 P.2d 1054, 1056 (1955). It may be significant that the maximum penalty for first offenders under the D.C.Code is that usually associated with a misdemeanor, D.C.Code, § 33–423, while penalties under the Federal acts are uniformly the more serious type associated with felonies. *Cf.* Daloia v. Rhay, 252 F.2d 768 (9th Cir. 1958); State v. Pirkey, 203 Or. 697, 281 P.2d 698 (1955), and cases cited therein. Compare Hamilton Nat'l Bank of Washington v. District of Columbia, 85 U.S.App.D.C. 109, 176 F.2d 624 (1949).

7. H.R.Rep. 2388, 84th Cong., 2d Sess. 54 (1956), reads in pertinent part:
"Because contact with a drug is the essential prerequisite to addiction, the elimination of this contagious pestilence from our society can be most effectively accomplished by striking at the illicit trafficker. [The narcotic traffickers * * * are in most cases well organized professional racketeers * * *. *Id.* at 9.]
"It is also important that addicts be deterred and be provided adequate medical and rehabilitative treatment so as to relieve them of their tragic dependency on drugs and to restore them to a constructive status in society."
See Hawkins v. United States, 109 U.S. App.D.C. 338, 340, 288 F.2d 122, 124 (1960) (Bazelon, J., concurring); Trent v. United States, 109 U.S.App.D.C. 152, 156, 284 F.2d 286, 290 (1960) (Bazelon, J., dissenting), cert. denied, 365 U.S. 889, 81 S.Ct. 1035, 6 L.Ed.2d 199 (1961).

with their higher penalties, the prosecutor must be able to come forward with some evidence of involvement in drug traffic beyond that which would be shown by possession of personal supplies by a mere addict? If so, how and when?

It seems imperative to me that these questions be considered in a more extensive fashion than is apparent from the per curiam judgment of affirmance in this case.

FAHY, Circuit Judge: I agree that the questions discussed by Chief Judge Bazelon should have the consideration of the court *en banc*, and I accordingly would grant the petition which seeks such consideration.