366 F.2d 254
 2 A.L.R.Fed. 969
 Leonard WALLACH, Appellant,
v.
Philip LIEBERMAN, trading under the firm name of MRM
Contracting Co., Appellee.
Application of Vincent L. BRODERICK, etc., and Harvey G.
Foster, etc., to quash subpoenas duces tecum, Appellees.
 No. 360, Docket 28510.
 United States Court of Appeals Second Circuit.
 Argued May 3, 1966.
Decided Sept. 21, 1966.
 
 Jacob Rassner, New York City, for appellant.
 Patrick E. Gibbons, New York City (Terhune, Gibbons & Mulvehill, New York City, on the brief), for appellee.
 John W. Douglas, Asst. Atty. Gen., Morton Hollander and Richard S. Salzman, Washington, D.C., Attys., for the United States as amicus curiae.
 Before LUMBARD, Chief Judge, and MOORE and FEINBERG, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 This appeal grows out of an injury to plaintiff-appellant which occurred, incredibly, twelve years ago. The district court characterized the suit as 'vexatious and worthless litigation with which two District Judges and the Court of Appeals have been burdened.' See Wallach v. Lieberman, 219 F.Supp. 247, 249 (S.D.N.Y.1963). Again we address ourselves to plaintiff's claims and find this appeal also to be without merit.
 
 
 2
 On September 2, 1954, plaintiff Leonard Wallach, while working as a painter in the employ of defendant-appellee Philip Lieberman, was injured when he fell from a scaffolding in the United States Post Office and Courthouse in Brooklyn. Lieberman had been hired by the United States as an independent contractor. In 1956, plaintiff brought suit against the United States, claiming that use of the scaffolding by Lieberman was negligence for which the government was liable. The suit was unsuccessful, the trial court holding that any injuries to plaintiff were not caused by any negligence of the United States.[1] Two months later and just short of six years after the accident, plaintiff sued Lieberman in August 1960. The complaint, as amended,[2] alleges that the matter arises under the constitution of the United States, 28 U.S.C. 1331, and presents eight caused of action resulting from plaintiff's fall from the scaffolding; it seeks $250,000 compensatory and $100,000 punitive damages.[3] After defendant brought appropriate motions, the district court held that under 40 U.S.C. 290 the New York Workmen's Compensation Law, McKinney's Consol.Laws, c. 67, applied; therefore, the action was barred, presumably under section 11 of that law, which provides that the statutory liability of the employer 'shall be exclusive.' Wallach thereupon filed a notice of appeal; the appeal has languished for almost three years.
 
 
 3
 On appeal, Wallach raises a variety of questions; only a few justify more than summary comment. 40 U.S.C. 290 gives a state, within whose boundaries a federal building is situated, jurisdiction to apply its compensation law.[4] Appellant argues that this is an unconstitutional delegation of Congressional legislative power to state legislatures, which also violates the federal goal of uniformity. Alternatively, he maintains that as a condition for acceptance of jurisdiction to apply its compensation act, New York requires a waiver by the parties of all federal rights and that there has been no such waiver.
 
 
 4
 Appellant's constitutional argument is answered by United States v. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). In that case, the constitutionality of the federal Assimilative Crimes Act, 18 U.S.C. 13, was attacked insofar as it made applicable to a federal enclave a subsequently enacted criminal law of the state in which the enclave was located.[5] The Court held that Congressional assimilation of state penal laws was not an improper delegation, but was a 'deliberate continuing adoption by Congress for federal enclaves * * *. Congress retains power to exclude a particular state law from the assimilative effect of the Act. This procedure is a practical accommodation of the mechanics of the legislative functions of State and Nation * * *.' Id. at 294, 78 S.Ct. at 296. The Sharpnack opinion adequately distinguishes the case upon which appellant chiefly relies, Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920), which struck down an attempt to make state workmen's compensation laws applicable to injuries within the federal admiralty and maritime jurisdiction. As the Supreme Court explained, the constitution requires national uniformity in the admiralty jurisdiction; however, with respect to certain crimes in federal enclaves, instead of any such constitutional mandate, there is an express Congressional policy of promoting conformity with state law, 355 U.S. at 294-295 n. 10, 78 S.Ct. 291. Cf. James Stewart & Co. v. Sadrakula, 309 U.S. 94, 100-101, 60 S.Ct. 431, 84 L.Ed. 596 (1940). The same is true of the field of accidental industrial injuries on federal property not otherwise covered by such federal statutes as the Federal Employers' Liability Act, 45 U.S.C. 51 et seq. Appellant points out that the United States acquired the property on which the accident occurred in 1907, well before New York enacted its workmen's compensation law; he urges that the latter, therefore, cannot apply. However, it is ridiculous to claim, as appellant does, that Congress could not add to the law that 'went' with the land in 1907; Congress has such power, and in 1936 exercised it in 40 U.S.C. 290, permitting state compensation laws to apply to accidents on the property. Therefore, appellant's constitutional argument fails.
 
 
 5
 Before leaving the issue of constitutionality, however, and issue should be noted which neither party originally called to our attention. Although appellant informed the district court under the local rules[6] of his constitutional attack on 40 U.S.C. 290, it appears that the court failed to certify this fact to the Attorney General to afford the United States an opportunity to intervene under 28 U.S.C. 2403.[7] Even though the district court found the constitutional question frivolous, we think that it is required practice to give the Attorney General notice, leaving to him the decision whether to intervene. See Smolowe v. Delendo Corp., 36 F.Supp. 790 (S.D.N.Y.1940), aff'd on other grounds, 136 F.2d 231, 148 A.L.R. 300 (2d Cir.), cert. denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943) (court notified Attorney General even though constitutional question might never be passed on); 4 Moore, Federal Practice P24.06 at 27 (1963). It may be urged that a district court should follow the analogy of cases which refuse to invoke a three-judge court when a constitutional issue is insubstantial, e.g., Swift & Co. v. Wickham, 382 U.S. 111, 114-115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). However, we do not find this persuasive; the waste of judicial manpower and the procedural problems caused by the convening of a three-judge court over a frivolous claim of unconstitutionality are absent when the Attorney General is notified of a similar claim. Moreover, the legislative history of the statute makes clear that it is the Attorney General who should decide whether, under all of the circumstances, he should intervene.[8]
 
 
 6
 28 U.S.C. 2403 is not clear as to the effect of the failure of the district court to notify the Attorney General. Appellant belatedly argues that failure to certify deprived the district court of subject matter jurisdiction and requires reversal. It has been suggested that lacking certification, a constitutional question should not be considered on appeal. Hamilton Nat. Bank v. District of Columbia, 85 U.S.App.D.C. 109, 176 F.2d 624, 630, cert. denied, 338 U.S. 891, 70 S.Ct. 241, 94 L.Ed. 547 (1949) (Edgerton, J., dissenting). Unless the Attorney General desired to argue against the statute's constitutionality-- if his authority and 28 U.S.C. 2403 would indeed permit this, see Legislation, 38 Colum.L.Rev. 153, 156 n. 27 (1938)-- we can see no harm from the district court's failure to certify. Cf. Sardino v. Federal Reserve Bank, 361 F.2d 106, 114 (2d Cir. 1966). In Thatcher v. Tennessee Gas Transmission Co., 180 F.2d 644, 648 n. 7 (5th Cir.), cert. denied, 340 U.S. 829, 71 S.Ct. 66, 95 L.Ed. 609 (1950), the Fifth Circuit upheld the constitutionality of a statute although the question was not called to the attention of the government below, but certified the question to the Attorney General, and afforded him sixth days to apply for a rehearing if he determined that the public interest had not been fully protected by the judgment to be entered. See generally Note, Federal Intervention in Private Actions Involving the Public Interest, 65 Harv.L.Rev. 319, 321-24 (1951). We have proceeded differently, requesting on our own motion the Attorney General to submit a brief amicus curiae limited to the issues of whether a frivolous question need by certified by the district court and what effect lack of certification would have on the judgment. The Attorney General has treated our request as the equivalent of a certification under 28 U.S.C. 2403.[9] His position is that certification is mandatory, but that failure to certify when, as here, the challenge to the validity of 40 U.S.C. 290 is unsuccessful, does not deprive the district court of jurisdiction; he states that the government does not desire to intervene in the suit. We hold that the district court's failure to certify did not deprive it of jurisdiction.
 
 
 7
 Appellant also urges that unless the parties have waived their federal rights under N.Y. Workmen's Comp. Law 113,[10] New York does not accept the jurisdiction to apply its compensation law granted in 40 U.S.C. 290. We disagree with this argument because we do not believe section 113 was intended to apply to cases involving 40 U.S.C. 290. First, it was not necessary for New York to accept expressly the jurisdiction it was given by 40 U.S.C. 290; as it was said of the Pennsylvania compensation law, so it can be said of New York's: 'At all times there has been present in the * * * Act an intent that it be effective as to all against whom it could be applied.' Capetola v. Barclay White Co., 139 F.2d 556, 559, 153 A.L.R. 1046 (3d Cir. 1943), cert. denied, 321 U.S. 799, 64 S.Ct. 939, 88 L.Ed. 1087 (1944). Second, that section 113 was not drafted specifically to accept-- on condition of waiver-- the jurisdiction permitted by 40 U.S.C. 290 is obvious from the fact that section 113 was enacted in 1922, fourteen years before Congress conferred the 40 U.S.C. 290 jurisdiction. Finally, it seems clear that the waiver referred to in section 113 applies only where there would be a conflict between an employee's federal right, e.g., a Jones Act claim, and his remedy under New York's compensation act, if the latter were to apply. Under these circumstances, section 113 has necessarily been construed as
 
 
 8
 a permissive statute intended to empower the board to make awards of compensation if all of the parties elect to settle their dispute in that fashion, and forego their Federal rights and remedies.
 
 
 9
 Ahern v. South Buffalo Ry., 303 N.Y. 545, 555, 104 N.E.2d 898, 903 (1952), aff'd, 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953). But section 113 has no relevance to 40 U.S.C. 290, because under that section there is no potential conflict between federal and state law; indeed, to allow the parties to avoid New York's compensation act in favor of some other illusory 'federal right' would create a conflict with Congressional purpose, which was clearly to conform federal with state law in this area. Since a section 113 waiver was not required, it is unnecessary to deal with the weighty argument that, in any event, plaintiff's conduct in obtaining and accepting compensation awards amounted to such a waiver.[11]
 
 
 10
 Appellant's further claims in this court warrant only summary treatment; we have considered them all and they are without merit or irrelevant.[12] Since we conclude that the judgment for defendant must be affirmed, appellant's appeal from a prior order of Judge Harold R. Tyler, Jr., quashing subpoenas relating to this action is moot.
 
 
 11
 Judgment affirmed.
 
 
 
 [1]
 Wallach v. United States, 184 F.Supp. 785 (S.D.N.Y.1960), aff'd, 291 F.2d 69 (2d Cir.), cert. denied, 368 U.S. 892, 935, 972, 82 S.Ct. 145, 373, 442, 7 L.Ed.2d 90, 197, 402 (1961)
 
 
 [2]
 Two causes of action were added by amendment of the complaint in 1963
 
 
 [3]
 According to the district court opinion, 219 F.Supp. at 248, plaintiff had received by 1963 workmen's compensation awards of almost $20,000
 
 
 [4]
 Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of and requiring compliance with the orders, decisions, and awards of said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be
 For the purposes set out in this section, the United States of America vests in the several States within whose exterior boundaries such place may be, insofar as the enforcement of State workmen's compensation laws are affected, the right, power, and authority aforesaid: Provided, however, That by the passage of this section the United States of America in nowise relinquishes its jurisdiction for any purpose over the property named, with the exception of extending to the several States within whose exterior boundaries such place may be only the powers above enumerated relating to the enforcement of their State workmen's compensation laws as herein designated * * *.
 
 
 [5]
 For a discussion of that Act, see Note, 70 Harv.L.Rev. 685 (1957)
 
 
 [6]
 S. & E.D.N.Y.Gen.R. 24
 
 
 [7]
 In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest in drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs tot he extent necessary for a proper presentation of the facts and law relating to the question of constitutionality
 
 
 [8]
 In its original form, the bill which became 2403 specifically left it with the court to determine in the first instance the substantiality of the claim of unconstitutionality. See H.R. 2260, 75th Cong., 1st Sess., reprinted in 81 Cong.Rec. 3269 (1937). However, in the Senate an amendment was offered expressly to remove the district court's discretion whether to certify a constitutional question. 81 Cong.Rec. 8507. As so amended, the Senate passed the bill. 81 Cong.Rec. 8514-15. In conference the managers of the bill for the House acquiesced in the Senate's change, H.R.Rep. 1490, 75th Cong., 1st Sess., at 5, reprinted in 81 Cong.Rec. 8609 & 8701-02; the conference report was accepted by both houses, 81 Cong.Rec. 8609, 8705; and the bill became law, 50 Stat. 751 (1937), now codified as 28 U.S.C. 2403
 
 
 [9]
 Certification and intervention are permissible at any stage of the proceeding. See, e.g., Glidden Co. v. Zdanok, 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961) (Supreme Court certified question); id. at 885, 82 S.Ct. 140 (United States intervened); Supreme Court Rule 33, subd. 2(b)
 
 
 [10]
 The provisions of this chapter shall apply to employers and employees engaged in intrastate, and also interstate or foreign commerce, for whom a rule of liability or method of compensation has been or may be established by the congress of the United States, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, provided that awards according to the provisions of this chapter may be made by the board in respect of injuries subject to the admiralty or other federal laws in case the claimant, the employer and the insurance carrier waive their admiralty or interstate commerce rights and remedies, and the state insurance fund or other insurance carrier may assume liability for the payment of such awards under this chapter
 
 
 [11]
 Compare Ahern v. South Buffalo Ry., supra, and Heagney v. Brooklyn E. Dist. Terminal, 190 F.2d 976 (2d Cir. 1951), cert. denied, 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 688 (1952), which found waiver, with Calbeck v. Travelers Ins. Co., 370 U.S. 114, 131-132, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), and Harney v. William M. Moore Bldg. Corp., 359 F.2d 649 (2d Cir. 1966), which did not
 
 
 [12]
 Appellant's brief on appeal raised the following additional points not already discussed: dismissal for lack of jurisdiction below barred summary judgment; the post office building is under exclusive Congressional jurisdiction; the New York State Compensation Law is not the exclusive remedy for an injury on federal property; statutes of limitation were tolled during the period plaintiff sued the wrong party; and privilege in resisting a subpoena was not properly urged by governmental authorities. At oral argument, plaintiff also claimed that plaintiff's 'brain damage' also tolled any statute of limitations