**1398**

MASSACHUSETTS MUTUAL LIFE IN-
SURANCE COMPANY

v.

CENTRAL-PENN NATIONAL BANK
OF PHILADELPHIA et al.

Civ. A. No. 43188.

United States District Court,
E. D. Pennsylvania.

Aug. 30, 1973.

William J. Kennedy, Philadelphia, Pa.,
for Mass. Mutual.

Richard M. Shusterman, Philadelphia,
Pa., for Central-Penn.

Harry A. Dower, Allentown, Pa., for
Lehigh Valley.

Peter C. Paul, Philadelphia, Pa., for
Mercantile Financial.

Raymond T. Cullen, Jr., Philadelphia,
Pa., for Federation Bank (now Franklin
Bank).

Stanley Schlesinger, Philadelphia, Pa.,
for Marine Midland (MacNair As-
signee).

Morris M. Shuster, Philadelphia, Pa.,
for Mokrins.

Carl E. Esser, Philadelphia, Pa., for
Pioneer Leasing.

Edward Cohen, Philadelphia, Pa., for
Gordon Miller.

## OPINION

LUONGO, District Judge.

This is an interpleader action under
28 U.S.C. § 1335. The question before
the court is whether the scope of this
proceeding should be limited to a resolu-
tion of the priority of claims to a fund
admitted to be due, or be expanded to
resolve disputes between the interplead-
ing plaintiff and the person to whom it
admittedly owes some money concerning
the contract between them which gave
rise to the indebtedness. For reasons
hereafter stated, I conclude that these
proceedings will be restricted to a deter-
mination of the priorities to the fund
with limited inquiry as to whether the
interpleading party has paid the proper
amount into court.

## HISTORY

By a contract dated April 1, 1951,
Gordon S. Miller became a general agent
for Massachusetts Mutual Life Insur-
ance Company (Mass. Mutual). The con-
tract provided, inter alia, for the pay-
ment to Miller of commissions on insur-
ance policies written during Miller's
general agency, including some continu-
ing payments of commissions on renew-

als at reduced rates after termination[1] of the agency. While serving as a general agent for Mass. Mutual, Miller engaged in various outside financial transactions, in some of which he made assignments of amounts due him under the contract, and others of which resulted in judgments against him and subsequent attachments of the amounts due him under the contract. On July 6, 1966, Mass. Mutual terminated Miller's contract as general agent.

On July 24, 1967, because of a multiplicity of claims and attachments asserted against it by creditors holding assignments from, or judgments against, Miller, Mass. Mutual filed this complaint in interpleader, naming as defendants Central-Penn National Bank, Lehigh Valley Trust Co. (now Industrial Valley Bank), Mercantile Financial Corp., Curtiss National Bank, Federation Bank and Trust Co. (now Franklin National Bank), Marine Midland Grace Trust Co., Isadore Mokrin and Dorothy Mokrin, Pioneer Leasing Corp., Gordon S. Miller and Mrs Gordon S. Miller. With the filing of the complaint, Mass. Mutual paid into the registry of the court the sum of money which it contended was then due and owing to Miller[2] ($173,845.39) as commissions under the contract, with renewal commissions computed at the reduced rates following termination of the general agency. To date (as of June 30, 1973) the accrued commissions total $612,398.89; Mass. Mutual estimates there will be another $62,000 added to this fund. The parties are agreed that if commissions were paid at the unreduced rates, the size of the fund would be increased by over $500,000.

After the complaint was filed, Curtiss National Bank withdrew its claim with prejudice. On December 9, 1968, two Florida attorneys, Guilmartin and Bartel, were permitted, by stipulation, to intervene as defendants.

The claims and attachments, and the bases therefor, are:

| | |
|---|---|
| Central-Penn National Bank | $550,000.00 |
|    Assignment, Note 4/25/63 | |
|    Financing Statements 6/6/63 | |
| Franklin National Bank | 62,000.00 |
|    Attachment in Massachusetts 2/7/66 | |
|    (Superior Court of Suffolk County, | |
|     Equity No. 85075) | |
| Mercantile Financial Corp. | 165,021.12 |
|    Judgment on guaranty agreement | |
|     in E.D.Pa. 9/22/65 (Civil Action | |
|     No. 39086) | |
|    Writ of Execution on all but wages | |
|     and salaries 1/66/66 | |
| Marine Midland Grace Trust Co. | 34,357.03 |
|    Judgment on note in E.D.Pa. 6/29/66 | |
|    (Civil Action No. 40569); Petition to | |
|     Reach and Apply in D.Mass. 7/15/66 | |
|    (EBD No. 66–103) | |
| Isadore and Dorothy Mokrin | 221,056.03 |
|    Judgment in Pennsylvania 3/17/67 | |
|    (Court of Common Pleas, Phila- | |
|    delphia County, March Term 1967, | |
|    No. 1002) | |
|    Attachment in Massachusetts 4/20/67 | |
| Lehigh Valley Trust Co. | $100,000.00 |
|    Assignment 5/6/64 | |
|    No financing statement | |
|    Admitted subordination to Central- | |
|    Penn | |
| Pioneer Leasing Corp. | 27,620.02 |
|    New Jersey Judgment on lease 12/2/66 | |
|    (Superior Court, Law Division, Camden | |
|    County, No. L–23323–65) | |
|    Attachment in Massachusetts 11/17/67 | |
|    (District Court of Springfield, Hampden | |
|    County, No. 191365) | |
| Guilmartin & Bartel | 13,232.19 |
|    Florida judgment for fees 3/14/68 (Cir- | |
|    cuit Court of Eleventh Judicial Cir- | |
|    cuit for Dade County, No. 68–2416) | |
|    Florida Writ of Garnishment 4/8/68 | |
|     TOTAL Claims and Attachments | $1,173,286.39 |

By order dated July 27, 1967, the named defendants were directed to file statements of claim within 20 days of service of the complaint in interpleader, and to file answers to the statements of claim filed by the others within 20 days after service of the statements of claim.

1. § 24 of the contract provides: "This contract may be terminated at any time with or without cause by [Mass.Mutual] or [Miller] . . . ., subject to the right of [Miller] to any commissions to which he may be entitled by the provisions of this contract." Detailed formulas for calculating the reductions upon termination are in §§ 6, 6a, 8 and 9.

2. With the exception of $32,817 which Mass. Mutual withheld as set offs against amounts due Miller.

The order further provided that, upon payment of the sum of money into the registry of the court, defendants were enjoined from instituting suits or prosecuting claims or suits already instituted in other courts based upon moneys due Miller from Mass. Mutual, except as parties to the interpleader proceeding. All named defendants except the Millers (and the Florida attorneys who were permitted to intervene later) complied with the order and filed timely statements of claim.[3] The Millers were granted an extension of time, allowing them until September 22, 1967, to file *answers* to the complaint in interpleader and to the claims. The Millers did file such answers, but at no time did either of them file a statement of claim.

Answers to the complaint in interpleader filed by several of the claimants denied that Mass. Mutual had paid into court the entire sum due Miller under the general agency contract, alleging that Mass. Mutual had improperly set off and asserted liens against commissions due Miller. On March 6, 1968, the court approved a stipulation of the parties dated October 31, 1967 (document No. 55), which provided for Mass. Mutual's discharge from liability only as to the sum ($173,845.39) paid into court, and not as to the sum ($32,817) or any other amount withheld by Mass. Mutual as an offset or lien against funds otherwise due and payable to Miller. The stipulation provided further that Mass. Mutual's entitlement to set off would be litigated after priority of the claims to the fund had been determined. On March 12, 1968 (document No. 56), the court approved a further stipulation providing for the transfer of the fund from the registry of the court to Central-Penn to hold in escrow pending determination of the validity and priority of the claims. The stipulation further provided for the periodic payment by Mass. Mutual to Central-Penn of amounts due and owing to Miller and for the discharge of Mass. Mutual from liability to the extent of the payments so made.

On September 18, 1968, the Millers filed a motion for summary judgment contending that (1) the action was improperly before an equity court, since it sought to fix the rights of judgment creditors; (2) the subject matter of the contract, namely earned commissions due Gordon Miller, was not a proper subject of interpleader; (3) commissions due and payable are exempt from attachment or assignment under Pennsylvania law; and (4) assignment of the commissions could not be made without the consent of Mrs. Miller. On June 30, 1969, Judge Kraft, before whom the motion was argued, filed an opinion and order (document No. 122) holding that the Millers were not entitled to move for summary judgment because they had failed to comply with the court's orders concerning the filing of a statement of claim. To facilitate disposition of the case however, Judge Kraft, acting pursuant to Rule 56(d), resolved certain questions of law. He ruled that wages, commissions and salaries are assignable under Pennsylvania law; that joinder of a wife in such an assignment is not necessary; that attachments made in Massachusetts by attaching creditors under Massachusetts law are valid with an exemption of $50 for wages; and that because wage attachments are valid under the law of Massachusetts, the courts of Pennsylvania will give effect to such attachments. He concluded therefore and so ordered, that:

"2. the assignments by Miller to the Central-Penn National Bank and Lehigh Valley Trust Co. are valid and enforceable under Pennsylvania law;

3. the attachments validly made in Massachusetts by the remaining defendants are enforceable under Pennsylvania law;

4. the exact status of Miller [whether employee or independent contrac-

---

3. For convenience, all defendants other than Millers will be hereafter sometimes referred to as "claimants."

tor] under his contract with Massachusetts Mutual is a material question of fact which requires a trial."

In 1970, the case was assigned to me under the individual calendar system. A preliminary pretrial conference was held on March 26, 1970. Questions were raised concerning the extent to which Miller should be permitted to participate in the interpleader proceedings in view of the ruling concerning his failure to file a statement of claim. At the conference, Miller's counsel contended that Miller was entitled to commissions at the unreduced rates notwithstanding the termination of the contract. He contended that the provision for reduction after termination did not apply to "vested" commissions, i. e. commissions which were dependent solely on payment of premiums by the policyholder. Mass. Mutual took the position that Miller's claim flew directly in the face of the written agreement and, in any event, the interpleader proceeding was not the appropriate forum for the resolution of such a dispute, if one really existed. The parties were then requested to submit briefs as to the proper scope of the interpleader proceedings—whether the court could, or should, in proceedings under 28 U.S.C. § 1335, go beyond the "res", i. e. the fund paid into court by the interpleading plaintiff.

Following the March 26, 1970 conference, Miller filed a pretrial memorandum in which he solicited the stipulation of all parties to permit him to file a statement of claim *nunc pro tunc*, but his effort failed.[4] After passage of a substantial period of time, Miller, represented by new counsel, filed a separate suit in this court (Gordon S. Miller v. Massachusetts Mutual Insurance Company, Civil Action No. 72–1185) seeking damages from Mass. Mutual for its alleged wrongful termination of his general agency contract.

The dispute over the proper scope of the interpleader has continued since 1970 necessitating its resolution by this court.

### DISCUSSION

Interpleader is an equitable remedy. Its purpose is to provide a forum in which a holder of money admittedly owing to someone and claimed by several parties may have the question of entitlement to the fund settled in one proceeding and be himself discharged from all further liability as to the fund. Federal jurisdiction over such cases is codified in 28 U.S.C. § 1335:

"(a) The district courts shall have jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, . . . or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants . . . are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy. * * * "

4. The parties stipulated only that if there is anything left in the fund after all proper claims have been satisfied, Miller is entitled to the residue. See Court's Report of Pretrial Conference held December 21, 1970 (document No. 155).

The positions of the parties with respect to the scope of this interpleader may be summarized as follows:

Mass. Mutual, the interpleading plaintiff, views the proceeding as one which will enable it to avoid double liability for making payments to the wrong claimant; consequently it regards the "subject matter of the controversy" to be the fund paid into court, and contends that the interpleader court should decide only which of the claimants are entitled to receive the moneys which Mass. Mutual determines and admits that it owes Miller.

Miller's view of the scope of the interpleader has undergone a substantial change. At one time he argued (see Miller's brief, document No. 156) that the interpleader court should resolve all controversies between Mass. Mutual and himself, including his claim that he was entitled to full commissions after termination of the general agency. Probably as a result of his unsuccessful attempt to be permitted to file a statement of claim in the interpleader proceeding, he now takes the position that Mass. Mutual *has* paid into court what the contract calls for; that the interpleader court should decide only which of the claims are valid, and the order of priority of the valid claims. He insists now that he has the right to assert in the separate suit at law (where he has the right to demand a trial by jury) his claim that Mass. Mutual violated a custom in the trade by terminating his general agency contract and was therefore guilty of breach of contract for which it must respond in damages.

Claimants argue, in effect, that the "subject matter of the controversy" is the contract between Mass. Mutual and Miller. They arrive at that conclusion in this fashion: As a jurisdictional pre-requisite under 28 U.S.C.A. § 1335, the interpleader court must ascertain that the interpleading party has paid into court the entire fund in controversy, i. e. the highest amount claimed by any claimant to be due and owing by the interpleading party; that the highest amount claimed to be due and owing is payment of *full* commissions on renewals after termination on the theory that the contract does not mean what it says on its face; that the interpleader court must go beyond the four corners of the written agreement to ascertain, by extrinsic evidene, particularly the actions of the parties themselves and custom in the trade, the true meaning of the contract; and that the court must necessarily resolve the dispute over the meaning of the contract, since the fund over which the court has control must be awarded to someone.

## THE LAW

There does appear to be some confusion in the cases concerning the proper scope of interpleader, but the confusion is more apparent than real. Claimants rely upon language in opinions to the effect that, in order to invoke the jurisdiction of the interpleader court, the interpleading party must pay into court (or post bond to cover) the entire fund in dispute, to support the conclusion that the court must resolve all underlying disputes between the interpleading party and the person to whom it is indebted, but a careful analysis of the facts of the cases does not support the sweeping conclusion.

The statements relied on by claimants were used in several cases wherein the dispute was over amounts deducted by the interpleading party for claimed expenses or as set offs.[5] Since the parties in the instant case have stipulated that

5. Metal Transport Corp. v. Pacific Venture Steamship Corp., 288 F.2d 363 (2d Cir. 1961); American Smelting & Refining Co. v. Naviera Andes Peruana, S.A., 182 F.Supp. 897 (S.D.N.Y.1959); Westinghouse Electric Corp. v. United Electrical Radio & Machine Workers, 92 F.Supp. 841 (W.D.Pa.1950), 99 F.Supp. 597 (W.D.Pa.1951), 194 F.2d 770 (3d Cir. 1952); John Hancock Mutual Life Insurance Co. v. Yarrow, 95 F.Supp. 185 (E.D.Pa.1951).

Mass. Mutual may withhold the amounts claimed as set offs and liens until that matter is litigated after priority of claims has been determined, there is really no dispute between them as to whether Mass. Mutual should have deposited, or posted bond to cover, the amounts so set off.

Statements concerning the requirement to deposit the highest amount claimed were also used in cases where the interpleading insurance company paid into court only the face amount of the policy in spite of provisions of state law subjecting them to liability for payment of interest and reasonable attorney's fees for wrongful withholding of payment;[6] where the insurance company paid into court the lower amount payable under the terms of a policy for the death of an employee ($10,000) rather than the higher amount claimed to be due under the policy for the death of a department head ($15,000);[7] where the insurance company paid into court cash surrender value of a policy, rather than post bond for the face amount of the policy, in spite of the announced desire by one of the claimants that the policy remain in force;[8] and where the cases were decided on other grounds and the statements concerning amount of deposit appeared to be dicta.[9]

Two of the cases cited by claimants in support of their position seem to indicate that the subject matter of the controversy is, to a significant degree, within the control of the interpleading party. For example, in Kitzer v. Phalen Park State Bank, 379 F.2d 650 (8th Cir. 1967), in upholding the interpleader court's decision to accept a bond in lieu of deposit of disputed stock certificates, the appellate court stated:

"The determination of what 'property' is to be deposited under Tit. 28, § 1335 depends upon the person who invokes interpleader and what he asserts to be the subject matter of the controversy." *Id.* at 652

And in Northern Natural Gas Co. v. Grounds, 327 F.2d 1003 (10th Cir. 1964), 292 F.Supp. 619 (D.Kan.1968), 441 F.2d 704 (10th Cir. 1971), cert. den., 404 U.S. 951, 92 S.Ct. 268, 30 L. Ed.2d 267 (1971), 404 U.S. 1063, 92 S. Ct. 732, 30 L.Ed.2d 751 (1972), reh. den., 404 U.S. 1065, 92 S.Ct. 732, 30 L. Ed.2d 754 (1972), after the interpleader court had decided that it should limit the proceeding to the question of ownership of helium, the interpleading plaintiff clarified its position by stating that it desired to have all questions of its liability settled in the action, and the interpleader court thereafter defined the subject matter of the controversy as not only ownership of the helium but also entitlement to the proceeds of past sales thereof. Further, claimants herein failed to mention the court's treatment of an attempt by one of the claimants in

---

6. New York Life Insurance Co. v. Lee, 232 F.2d 811 (9th Cir. 1956). See also John Hancock Mutual Life Insurance Co. v. Beardslee, 216 F.2d 457 (7th Cir. 1954), cert. den., 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed. 751 (1955).

7. New York Life Insurance Co. v. Hannon, 280 F.Supp. 291 (D.Or.1967).

8. Edner v. Massachusetts Mutual Life Insurance Co., 138 F.2d 327 (3d Cir. 1943).

9. United Benefit Life Insurance Co. v. Leech, 326 F.Supp. 598 (E.D.Pa.1971) (dismissed for lack of diversity of citizenship with additional comment that stakeholder had failed to deposit the highest amount claimed); Scott v. Aetna Life & Casualty Co., 48 F.R.D. 446 (W.D.Va.1969) (dismissal of diversity action under 28 U.S.C. § 1332 for lack of jurisdictional amount with comment that the action could not be converted to interpleader since there was no stakeholder seeking discharge from conflicting claims); Frank Briscoe Co. v. Albert Pick Co., 282 F.Supp. 321 (D.N.J.1968) (dismissal of interpleader for lack of adverse claimants); Grace v. Carroll, 219 F.Supp. 270 (S.D.N.Y.1963) (decision on motion in action under § 1332 to join an indispensable party as a defendant, with comment that the action could not be converted to interpleader because "stakeholder" had not sought interpleader).

*Grounds* to assert a cross-claim in the interpleader proceeding for an alleged failure to exercise reasonable diligence in the sale of the helium. The interpleader court rejected that attempt stating:

> "[W]e must agree with the lessee-producers that those claims do not relate to the subject matter of the action. It is true that landowners' claims are founded upon the identical leases upon which lessee-producers base, in important part, their claims to the fund. In interpleader actions, however, the 'subject matter of the action' is not a set of facts, a transaction or other occurrence which gives rise to litigation, but a specific identified fund or property. Claims must not only 'relate' to that property, but be asserted against it, as we view the present law of this Circuit." 292 F.Supp. at 640.

The Court of Appeals, in discussing the "alleged breach of the covenant to market" said:

> "Interpleader jurisdiction is limited to the fund in controversy. Here the fund is the money paid and to be paid to the interpleading plaintiffs for the helium-gas mixture produced and sold by them. The cross-claims have no relation to that fund. Hence, jurisdiction [over the cross-claim] is not established." 441 F.2d at 715

There are other cases in which courts have rejected efforts to expand interpleader proceedings. E. g., Knoll v. Socony Mobile Oil Co., 369 F.2d 425 (10th Cir. 1966) (A claim for previous royalties alleged to have been wrongfully paid under oil and gas leases was held to be independent from the interpleader which was brought by the lessee to decide who was entitled to current installments due on those leases); First National Bank v.

Johnson County National Bank & Trust Co., 331 F.2d 325 (10th Cir. 1964) (A counterclaim filed by one of the claimants alleging that the action was a conspiracy to defraud was held by the court to be outside its jurisdiction in strict interpleader and was dismissed); State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) (Interpleading insurance company plaintiff in a multi-party tort action was not permitted to force the defendants to litigate their underlying tort claims against each other in the interpleader proceedings).

What appears to emerge fairly clearly from all the cases is that, at most, the interpleader court will require the interpleading party to pay into court (or post bond for) the highest amount claimed to be due and owing *under* the written instrument giving rise to the indebtedness, i. e. the highest amount claimed by any claimant to be due in accordance with the specific terms of the instrument itself. None of the cases, on its facts, goes as far as claimants in the instant case seek to do; that is, to have the interpleader court go *outside* the written instrument to create a dispute as to the amount due, and then resolve *that* dispute in order to determine whether the full amount due *under* the contract has been paid into court. In my view, the decided cases limit this court's role to determining whether Mass. Mutual has paid into court all that it owes to Miller in accordance with the specific terms of the written contract.[10]

## EQUITIES

Claimants make one other argument which requires comment. They urge that the equities of the situation require that this court resolve all issues between

---

10. Lehigh Valley (now Industrial Valley Bank) suggests that the written contract can be interpreted as partly unilateral, i. e. after Miller sold a policy, he had no further obligations to perform; consequently he was entitled to full renewal commissions; otherwise Mass. Mutual would be unjustly enriched.

This position is refuted by the terms of the contract itself. Miller was obligated to perform services, e. g. hire staff (¶ 9a), collect premiums (¶ 1,) keep records (¶ 17). There is ample justification on the face of the agreement itself for the payment of reduced commissions after termination.

Mass. Mutual and Miller. This argument is based on the charge that the injunction issued on July 27, 1967 prevented them from pursuing any remedies they might have had against Mass. Mutual to satisfy their claims against Miller anywhere other than in these proceedings; consequently it is unfair to refuse to resolve their ultimate rights against Mass. Mutual (which include Miller's ultimate rights against Mass. Mutual) and Mass. Mutual's liability to them all. There might be some appeal to that contention if Mass. Mutual were seeking discharge from all liability to Miller. The language of the prayer for relief in the complaint which was filed, and the terms of the injunction may be interpreted as referring to discharge from all liability; but the specific allegations of the complaint, particularly paragraphs 23, which specifically expresses Mass. Mutual's concern over double liability for payments made, and the stipulations of the parties (documents Nos. 55 and 56) seem clearly to contemplate Mass. Mutual's discharge from liability only to the extent of the amounts paid by it, and such other amounts as the interpleading court may determine to be due and owing in accordance with the terms of the written agreement. The provisions in the stipulation for Mass. Mutual to make payments as it determines to be due and owing "without prejudice to the right of any claimant herein to contest the correctness of such amount," expresses only the reservation of the right to have proper accounting of the payments due under the contract.

There are other equities to be considered, however, and if the scope of this interpleader proceeding were to be determined by the equities, they would favor limitation. Mass. Mutual and Miller, the parties to the contract, do not desire to have their dispute concerning alleged breach resolved in this proceeding. Miller at one time did, but his efforts to acquire unquestioned standing were rebuffed. Had Miller been successful and had he attempted to inject issues concerning the meaning of the contract, or of breach, into these proceedings, I might reach a different conclusion as to the scope of the proceedings. *Cf.* American-Hawaiian Steamship Co. v. Bowring & Co., 150 F.Supp. 449 (S.D.N.Y.1957); Builders and Developers Corp. v. Manassas Iron & Steel Co., 208 F.Supp. 485 (D.Md.1962). But Miller is not actively involved in these proceedings (except to contest the validity of the claims) and in light of his absence it would be inequitable to attempt to resolve issues which might seriously affect his unliquidated claims for damages for breach of contract which he has asserted in the separate suit.

## CONCLUSION

■ This interpleader proceeding will be limited to

(1) an accounting to determine whether Mass. Mutual has paid into court (i. e. to Central-Penn) the amounts due and owing to Miller in accordance with the terms of the written agreement between them;

(2) a determination as to which claimant or claimants are entitled to receive the funds thus paid and to be paid;

(3) a resolution of Mass. Mutual's right to set off or assert liens against the fund; and

(4) an assessment of proper charges and fees against the fund.

With the proceedings so limited, the interpleading party, Mass. Mutual, will be discharged from liability only to the extent of the amounts paid and to be paid, and Miller and any claimant will be free to assert any other claims they have against Mass. Mutual in an appropriate forum.