Richard DAVIS, et al., Plaintiffs-Appellees,

v.

Robert H. FENDLER, Defendant-Appellant.

No. 79–3691.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 1981.

Decided July 17, 1981.

E. Reid Southern, Southern & Mulhall, Phoenix, Ariz., for defendant-appellant.

Robert Schachter, New York City, argued for plaintiffs-appellees; Patricia I. Avery, Kass, Goodkind, Wechsler & Labaton, New York City, John E. Lundin, Jack S. Emery, Wentworth & Lundin, Phoenix, Ariz., on brief.

Before KILKENNY and SNEED, Circuit Judges, and HANSON, District Judge.*

KILKENNY, Circuit Judge:

This is an appeal from a default judgment which was entered against appellant for the sum of $37,929,368.00.

## BACKGROUND

This class action was filed by appellees on December 5, 1975, on behalf of all persons who had investments in Lincoln Thrift Association and U.S. Thrift Association as of November 28, 1975. The complaint charged the appellant and others with federal securities fraud violations and pendent state claims. Appellant was chief executive officer and major stockholder of both thrift companies (thrift companies being somewhat similar in character to savings and loan associations). The companies had raised over $50,000,000.00 from approximately 22,000 persons. The thrift associations and their subsidiaries and affiliates have been in a receivership during the entire course of the litigation. The primary thrust of the complaint is that appellant fraudulently induced investment in the thrift companies and that the funds were used to speculate in private enterprises for appellant's personal benefit. Appellant timely filed an answer and counterclaimed. On February 1, 1977, appellees propounded 115 interrogatories to appellant.[1] On

March 7, 1977, appellant, in a 1½ page response, objected to answering the interrogatories, *without making a claim of privilege.*[2]

There was a delay of approximately one year before appellees formally moved for an order to comply with their discovery request. During this period, appellees had made numerous informal attempts to resolve the discovery dispute. On August 9, 1977, counsel for appellees wrote to appellant's attorney in an attempt to resolve the impasse. Counsel noted that appellant's response had been untimely, that the blanket objections were insufficient and totally without merit, and stated that if complete answers were not received by August 18, 1977, appellees would take steps to ensure compliance. Appellant did not respond to the August 9th letter. On August 19, 1977, counsel for appellees wrote to appellant's attorney and requested a response to the discovery problem. On or about August 24, 1977, counsel discussed the objections with appellant's attorney, who refused to serve any answers. Appellees did not take formal steps to induce compliance because appellant's attorney advised them that he was involved with appellant's defense in a related state criminal trial and that he would attend to the interrogatories as soon as the trial was completed or he could devote sufficient time to the subject. Consequently, appellees did not take additional steps to compel answers to the interrogatories until

---

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The interrogatories requested information such as: (1) the names and state of incorporation of companies which were subsidiaries or affiliates of Lincoln Thrift, U.S. Thrift, or Omaha Surety Corporation of America, the corporation which allegedly insured the deposits of Lincoln Thrift and U.S. Thrift; (2) the identity of officers, directors and general managers of these companies and the periods during which they served; (3) information regarding directors' meetings, including times, dates, places, persons present, etc.; (4) types and amount of stock issued, information regarding identity of stockholders, information regarding stockholders meetings, etc.; (5) information regarding fiscal years of the corporations and tax

returns; (6) information regarding the dates of financial statements and the persons to whom the statements were disseminated; (7) information regarding registration of securities and prospectuses; (8) information regarding the identity of the persons who rendered legal services for the corporations; (9) information regarding the identity of persons who rendered accounting services for the corporation; and (10) information regarding the investments of the companies.

2. Appellant asserted that (1) the interrogatories were unjustly burdensome, oppressive, too broad, unnecessary, and requested data equally available to both parties; (2) the interrogatories constituted an improper "fishing expedition"; and (3) the interrogatories were vague and ambiguous.

they learned that counsel for appellant was not solely, if at all, engaged in the defense of appellant's criminal action. On April 12, 1978, appellees' attorney contacted appellant's attorney to determine whether appellant had decided to answer the interrogatories. Appellant's attorney indicated that appellant would not comply.

On April 25, 1978, appellees moved to compel answers to the interrogatories. In response, appellant moved for a protective order to stay further civil proceedings, pending final adjudication of a state criminal action (appellant's conviction, after a trial at which he testified, was on appeal), and all federal proceedings (a grand jury was investigating the thrift associations and was expected to culminate in an indictment of appellant). Appellant alleged that, because the subject matter of the civil and criminal proceedings overlapped, a stay was necessary to prevent an abridgement of his Fifth Amendment privilege against self-incrimination. In addition, appellant reasserted the substance of his earlier objections. See note 2, *supra*.

■ On May 22, 1978, the district court granted appellees' motion to compel answers and denied appellant's motion for a protective order. In order to comply with this order, appellant was required to answer the interrogatories or to set forth his claims of privilege specifically as to each interrogatory so that the judge would have a basis upon which to assess the merits of the particular objection. Inasmuch as appellant failed to comply with this order, appellees, on June 1, 1978, moved for an order requiring him to comply within a specified period. On June 2, 1978, appellant moved to reconsider the court's May 22nd order. The court denied the motion to reconsider, and, on June 19, 1978, set a July 28, 1978, deadline for compliance with its order compelling discovery. Appellant filed his "answers", specifying four numbered responses —2 claiming various privileges, 1 claiming oppression and irrelevancy, and 1 specifying various places where the requested information could be found.[3] (These "answers", in substance, were a restatement of appellant's earlier objections). Appellant then "answered" each interrogatory with one or more of the numbers corresponding to the 4 "responses". Appellant asserted the blanket claim of privilege to virtually every interrogatory.

On August 16, 1978, appellees' counsel wrote to appellant's attorney and, after noting that appellant's "answers" simply restated the objections which the district judge had found insufficient, demanded answers and threatened to move for sanctions. No response was received, and appellees, on October 16, 1978, moved to strike appellant's answer and to enter default judgment. On November 6, 1978, appellant again asserted that, because of the pendency of state criminal proceedings and the federal grand jury, any further discovery would violate his Fifth Amendment privilege against self-incrimination. After a hearing, the district court, on November 20, 1978, granted appellees' motion to strike appellant's answer and entered default against him.

Subsequently on June 12, 1979, appellees applied to the court for judgment by default pursuant to FRCivP 54(b) and 55(b) in the sum of $37,929,368.00. In response, appellant sought recusal of the district judge, claimed that Rules 54(b) and 55(b) were unconstitutional, requested that the default be set aside and that the proceedings be stayed, demanded a jury trial, and asserted that judgment was premature because dam-

---

**3.** Appellant, relying on FRCivP 33 (c), specified five places where appellees could find portions of the information requested: (a) the Arizona Corporation Commission, 2222 W. Encanto, Phoenix, Arizona; (b) the Arizona Department of Insurance, 1601 W. Jefferson, Phoenix, Arizona; (c) the Arizona Banking Department, 1601 W. Jefferson, Phoenix, Arizona; (d) the Arizona Attorney General's Office, 1700 W. Washington, Phoenix, Arizona; (e) the Boards of Trustees for Lincoln Thrift Association, its affiliates and subsidiaries, 3130 N. 3rd Avenue, Phoenix, Arizona. It is apparent that the records of the first four of these places do not qualify as appellant's "business records". A party cannot, under the guise of Rule 33(c) resort to such tactics. This is the sort of behavior which undoubtedly caused the trial judge to have legitimate doubts about appellant's blanket assertion of privilege.

ages could not be calculated with certainty. Appellant requested that the default be set aside because a federal indictment had been returned on June 14, 1979. The federal indictment involved similar issues to those in this action, and thus allegedly confirmed the validity of appellant's claim of privilege. Appellant sought recusal of the district judge because the judge had withdrawn from the criminal action. In appellant's mind, this withdrawal raised questions concerning the judge's ability to proceed impartially, and, therefore, compelled his recusal in the civil case as well.

On September 18, 1979, the date scheduled for the hearing on the application for default judgment, appellant requested that the matter be submitted for decision upon the pleadings filed. The application for judgment by default was then granted. The judgment was actually filed on September 27, 1979.

## ISSUES

It is our consensus that the appeal presents two principal issues.

I. Whether the district court abused its discretion in entering the default judgment as a sanction for violations of discovery orders, and

II. Whether it was error to enter judgment in the sum of $37,929,368.00 without conducting a full hearing.

Incidental contentions include:

A. Whether it was error for the district judge not to recuse himself,

B. Whether the district judge erred in failing to hold the hearing on the constitutionality of FRCivP 54(b) and 55(b), prior to the entry of judgment,

C. Whether it was error to enter judgment despite the existence of appellant's counterclaim.

## DISCUSSION

### I.

We have recently discussed the standards to be applied in reviewing the entry of default judgment as a sanction for violation of discovery orders in the context of a party's assertion of a Fifth Amendment privilege. *Baker v. Limber*, 647 F.2d 912 (CA9 1981). In *Baker*, we applied a two-part inquiry: (1) did the party resisting discovery *properly* assert his Fifth Amendment privilege,[4] and (2) if not, did the district judge abuse his discretion in imposing the sanction involved.

■ In *Baker*, we stated that the following principles were applicable in assessing whether a Fifth Amendment privilege had been properly invoked:

"'[T]he privilege normally is not asserted properly by merely declaring that an answer will incriminate.' *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir. 1981).

It is not necessary, of course, that the person to whom the question has been put establish the precise manner in which he will incriminate himself by responding. This would make the privilege useless. As the Supreme Court said in *Hoffman v. United States*, 341 U.S. 479, 486–87, [71 S.Ct. 814, 818, 95 L.Ed. 1118], . . . :

'To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'

*Id.* The trial court must make this determination from the facts as well as from 'his personal perception of the peculiarities of the case.' *Hoffman v. United States, supra*, 341 U.S. at 487, [71 S.Ct. at 818]. If he decides that no threat of self-incrimination is evident, the defendant then bears the burden of showing the danger of incrimination. *United States v. Neff*, 615 F.2d 1235, 1240 (9th Cir.),

---

**4.** We have previously noted that it is improper to make a proper assertion of the Fifth Amendment privilege "costly". *Campbell v. Gerrans*, 592 F.2d 1054 (CA9 1979).

*cert.* denied, [447 U.S. 925], 100 S.Ct. 3018, [65 L.Ed.2d 1117] (1980)." *Baker, supra,* at 916.

It is evident that the determination of whether the privilege has been properly invoked is for the district judge. The claimant is not the final arbiter of the validity of his assertion. A *proper* assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim.

■ We hold that the district court did not err in finding that appellant failed to support his claim of privilege. By itself, appellant's claim of privilege on account of the pendency of related criminal proceedings does not appear to be entirely without merit. In assessing the validity of a claim of privilege, however, we must consider the context in which such a claim is made.

Appellant first mentioned his Fifth Amendment privilege fifteen months after the interrogatories had been propounded. This was long after he knew he was under investigation, long after he had been indicted in the state court, long after his trial *at which he testified in his own behalf*, and months after he had been convicted in the state proceeding. Generally, in the absence of an extension of time or good cause, the failure to object to interrogatories within the time fixed by Rule 33, FRCivP, constitutes a waiver of any objection. This is true even of an objection that the information sought is privileged. *United States v. 58.16 Acres of Land,* 66 F.R.D. 570 (E.D. Ill.1975). Clearly, the Fifth Amendment is not a self executing mechanism. It can be affirmatively waived or *lost by not asserting it in a timely fashion. Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975).

■ Moreover, objections should be plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable. Appellant never identified, with any specificity, the interrogatories to which the claim of privilege pertained. Appellant's blanket claim of privilege is simply not sufficient. The district judge was acting well within his authority when he ordered appellant to provide additional information. The judge was faced with an inexcusably late claim of privilege asserted in response to a motion to compel answers by a party who had already testified, at some length, in the state proceeding. The judge was faced with a party who had claimed his Fifth Amendment privilege in response to questions about his address, his social security number, and about the address, place of employment, and nearest living relative of Sandra Fendler (appellant's wife or former wife).[5] A danger of incrimination is not evident from the implications of these and many of the other questions, nor did appellant provide any further basis for believing that a responsive answer or an explanation for his refusal would raise such a danger. The district judge was certainly correct in deciding that he needed more information from which to evaluate the validity of the claim of privilege. It is for the trial judge to determine if silence is justified; a claimant's own "say-so" does not of itself establish the hazard of incrimination. Our review of the record makes it plain that it was incumbent upon appellant to offer an explanation of how appellees' interrogatories could possibly have been incriminating. Certainly, at least some minimal level of responsiveness was required to alleviate the legitimate doubts[6] the trial judge had about appellant's claim of privilege.

---

5. On appeal, appellant suggests that he did not answer the questions involving Sandra Fendler because of the Arizona criminal statutes proscribing cohabitation and adultery. This sort of belated "explanation" is typical of appellant's conduct. There was no suggestion below that appellant's refusal to answer these questions had anything to do with the crimes of cohabitation and adultery. It is just this sort of behavior which must have raised doubts in the district judge's mind about the validity of appellant's blanket claim of privilege.

6. These legitimate doubts still could have existed after the federal indictment had been returned. In light of the preceding events, it was still incumbent upon appellant to do more than simply make a blanket claim of privilege.

Because we hold that appellant failed to support adequately his assertion of privilege, our only remaining inquiry is whether the district judge abused his discretion in imposing sanctions pursuant to FRCivP 37(b).

Although the courts have been somewhat reluctant to impose severe sanctions, preferring adjudication on the merits, the Supreme Court has rather recently said:

"... here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747, *rehearing denied,* 429 U.S. 874, 97 S.Ct. 197, 50 L.Ed.2d 158 (1976).

In *Baker,* we stated:

"The district court's decision will not be disturbed unless we have ' "a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." ' *United States v. Sumitomo Marine, supra,* 617 F.2d [1365] at 1369 [9th Cir. 1980] (quoting *Anderson v. Air West, Inc.,* 542 F.2d 522, 524 (9th Cir. 1976)). By entering a default judgment against appellant, the court imposed the harshest of the Rule 37(b) sanctions. As a matter of due process, such sanctions are not to be imposed unless noncompliance with discovery procedures is due to willfulness or bad faith. *National Hockey League, supra,* 427 U.S. at 640 [96 S.Ct. at 2779]. Nevertheless, we have often upheld dismissal of a complaint or entry of default as sanctions within the lower court's discretion." *Baker, supra,* at 918.

█ We hold that the district court did not abuse its discretion in entering default judgment against appellant. The sanction was imposed because of appellant's persist-ent unresponsiveness to both informal discovery requests and formal court orders. Appellant never appeared to take seriously the district judge's orders. Appellant, who explained that the reason for the sanction "was simply that there was a philosophical difference of opinion between the district judge and the litigant as to how much information should be revealed when invoking the privilege to assure him that there was a reasonable basis therefor", decided that he would be the "final arbiter" of the validity of his claim of privilege. The timing and nature of appellant's objections, the dilatory and evasive tactics, and the intentional and willful flouting of the obligations of the discovery provisions and of the district judge's authority, all make it evident that appellant was proceeding in bad faith. Our review of the record convinces us that the district judge was well within his discretion in assessing the sanction of default judgment. We would be undermining the authority of our district judges to prevent further proliferation of discovery abuses if we were to hold otherwise.

## II.

█ It is well settled that a default judgment for money may not be entered without a hearing unless the amount claimed is a liquidated sum or capable of mathematical calculation. *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (CA5 1979). Here, the documentary evidence shows that the amount of the judgment was based on definite figures. In any event, appellant is in no position to take advantage of that rule of law. The record makes it clear that the court set a time and place for the hearing on the default judgment and that the hearing would encompass the amount of the judgment to be entered. On September 18, 1979, when the clerk of the district court called the case for hearing on the application for the judgment by default, the appellees responded that they were ready. The court then intervened and called attention to the fact that he had before him a motion on the part of appellant's counsel to submit the applica-

tion for judgment by default on the pleadings. The court asked counsel for the appellees if they had anything to say. In response, the appellees' attorney said that he wanted to make it clear that opposing counsel were waiving a hearing to establish the *amount of the default*. He specifically mentioned that he had a witness present to further confirm the amount of damages and mentioned that if it was clear that there was a waiver, then the appellees would have no objection to the submission without the presentation of additional evidence. In response, the court mentioned the affidavit executed by the appellant in which he instructed his counsel to prepare and file a motion to submit the issue on the pleadings. The court stated: "So I take it by that, that is a waiver of these proceedings." The appellees' counsel again mentioned that he had a witness ready to testify as to the amount that should be allowed as judgment. The court then said:

"Under the circumstances then, the Court will grant the judgment as submitted, with the papers heretofore filed with the Court; and particularly the application for judgment by default against the Defendant, Robert H. Fendler.

"And the judgment will be executed as of this date."

Before the court at the time was appellees' memorandum of points and authorities filed September 12, 1979, from which we quote:

"The amount of damages sought in this application by the class members is known—it is the difference between the amount deposited and the amount distributed by the receivership, that is, thirty-seven million, nine hundred twenty-nine thousand, three hundred sixty-eight ($37,929,368) dollars. Mr. M. H. Segner, a member of the Board of Trustees for Lincoln and U.S. Thrift Associations who is knowledgeable about the records of the receivership, will testify at the hearing on this application and will confirm the relevant facts."

Segner was the person whom appellees had present at the time of the hearing.

Beyond question, the appellant was aware of the amount which would be claimed by the appellees at the time of the hearing. He was aware of the consolidated and combined balance sheets (Exhibit 3) which were before the court and which recited, as of March 31, 1979, under the heading "Liabilities, Investor Accounts" the figure $37,929,368.00, the figure on which the court based its judgment. These balance sheets show that the amount of the liabilities had been reduced to that amount from the original sum of $52,887,492.00, which was owing the investors as of December 3, 1975.

Although appellant in his response to the motion for judgment makes some contention that the appellees' application for judgment is premature in that the damages cannot now be calculated with certainty and complains that the balance sheet is not certified, nonetheless, he had his opportunity to appear at the time of the hearing on the issue of the amount of the judgment and failed to appear. The record is undisputed that he deliberately waived his right to appear and to testify. We will not permit a litigant to play cat and mouse with the court, waive his right to appear at the most important hearing in the litigation, and then come forward and claim that the court was in error in proceeding as it did.

The record is not clear as to whether the receivership has been closed. Needless to say, if in the course of liquidation, the receiver has secured or will secure additional funds which are payable to the appellees, those funds should and must be applied against the judgment. However, there is nothing in the record to show what sum, if any, might have been accumulated by the receiver for the benefit of the appellees since the date of the consolidated and combined balance sheets [Exhibit 3, dated March 31, 1979].

## INCIDENTAL CONTENTIONS

### A.

■ Appellant argues that the district judge should have disqualified himself

in this case because he had voluntarily withdrawn from a partially related criminal trial, allegedly on the ground that he had already held appellant in contempt in a related civil proceeding. We note that no personal bias or prejudice was claimed by appellant and there was no request for recusal as prescribed by 28 U.S.C. § 144. This statute makes it clear that a person claiming bias or prejudice of a judge must make and file a timely and sufficient affidavit that the judge before whom the matter is pending has a *personal bias or prejudice,* either against him or in favor of any adverse party. The statute requires the affiant to state the facts and the reasons for the belief that bias or prejudice exists. No such affidavit was filed in this case. The failure to follow these elementary procedural requirements defeats a charge of bias. *United States v. Azhocar,* 581 F.2d 735, 738 (CA9 1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979).

The fact of the prior contempt ruling had long been known to appellant. Nonetheless, he failed to file the necessary affidavit showing bias or prejudice. In the absence of specific allegations of *personal* bias, prejudice, or interest, neither prior adverse rulings of a judge nor his participation in a related or prior proceeding is sufficient. *Azhocar, supra; United States v. Daley,* 564 F.2d 645 (CA2 1977), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978); *United States v. Schwartz,* 535 F.2d 160 (CA2 1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 581, *rehearing denied,* 430 U.S. 976, 97 S.Ct. 1669, 52 L.Ed.2d 371 (1977).

We have examined the cases cited by appellant and they do not support his argument. The contention is meritless.

### B.

Appellant argues that a remand is necessary because the district judge failed to hold a hearing, allegedly required by 28 U.S.C. § 2403, on his claim that FRCivP 54(b) and 55(b) were unconstitutional prior to the entry of judgment. Ordinarily, we would not dignify this contention by discussing it in our disposition. However, because this argument is indicative of appellant's behavior throughout this litigation, we feel compelled to do so in this instance.

The constitutional argument, that the Rules are unconstitutional insofar as they can be construed to justify the imposition of sanctions for the assertion of a constitutional privilege, need not detain us long. Appellant's constitutional argument distorts the basis for the default judgment. Sanctions were imposed for appellant's flagrant disregard for both the obligation to participate in discovery in good faith and the district court's orders requiring appellant to respond specifically to the interrogatories. And, as we have held, the district court did not err in concluding that appellant had not *properly* asserted his Fifth Amendment privilege. Therefore, the constitutional argument is without merit.

More important, perhaps, than the merits of appellant's constitutional argument, is appellant's reliance on 28 U.S.C. § 2403. That section provides:

"(a) In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality."

Appellant contends that § 2403 requires the district judge to hold a hearing on the constitutional issue, and that the district judge's failure to hold a hearing warrants a remand. Assuming, *arguendo,* that § 2403 applied to the constitutional challenge here-

in involved that section was clearly not enacted to benefit parties in appellant's position. As the Second Circuit commented in *Wallach v. Lieberman*, 366 F.2d 254 (CA2 1966), when a party made an equally unsuccessful constitutional challenge, "we can see no harm from the district court's failure to certify." *Id.* at 258. In *Wallach*, the court also found that the failure to certify, when the challenge was unsuccessful, does not deprive the district court of jurisdiction. *Id.* We fail to see how appellant could have been benefited by the intervention of the Attorney General, who presumably would have argued in favor of the constitutionality of the Rules. Appellees commented in their brief: "Fendler's alleged claim of unconstitutionality under 28 U.S.C. § 2403 and the notice thereof was nothing more than a sham attempt to delay the entry of the judgment against him and such delaying tactics should not be sanctioned by this Court." We find ourselves in full agreement with this statement.

Appellant's § 2403 argument does not appear to have been made in good faith. And, this specious argument is precisely the sort of conduct with which the district judge was faced. In these circumstances, the district judge's approach, in requiring appellant to answer the interrogatories or to provide the judge with the information to evaluate intelligently the claim of privilege, seems eminently reasonable.

**7.** All sums paid to appellees by the receivership subsequent to the date of judgment should be reported to the district court forthwith and

### C.

Finally, appellant suggests that he has been denied due process by entry of judgment against him while his counterclaims remain to be litigated. We find this contention to be without merit. The pendency of counterclaims alone does not prevent a Rule 54(b) certification. *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). A district judge's Rule 54(b) certification is to be upheld absent an abuse of discretion. *Id.*; 6 J. Moore Federal Practice ¶ 54.41[3]. Appellant has not established an abuse of discretion. Appellant could have sought relief under FRCivP 62(h). *Curtiss-Wright, supra*; 6 J. Moore Federal Practice ¶ 56.-17[15].

### CONCLUSION

The judgment [7] of the district court must be affirmed.

IT IS SO ORDERED.

applied in partial satisfaction of the judgment hereby affirmed.