Jose A. FONSECA, Plaintiff,

v.

Donald T. REGAN,* Secretary of the Treasury, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

UNITED STATES CURRENCY AMOUNTING TO the SUM OF TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000.00), More or Less, et al., Defendants.

Nos. 78–C–1907, CV–81–3542.

United States District Court, E.D. New York.

Aug. 4, 1983.

---

5. See the Fourth Defense in Form 20 of the Appendix of Forms to the Rules, incorporated by reference through Rule 84.

* When this action was commenced, W. Michael Blumenthal, then the Secretary of the Treasury, was named as the lead defendant. The court now orders, pursuant to Fed.R.Civ.P. 25(d), that the caption be changed to reflect the fact that Donald T. Regan is now the Secretary of the Treasury.

**696**

Raymond J. Dearie, U.S. Atty., E.D.N.Y. by Beryl R. Jones, Asst. U.S. Atty., Brooklyn, N.Y., for U.S. and Donald T. Regan.

Coudert Brothers by John Carey, New York City, for Republic of Colombia.

Robert Abrams, Atty. Gen. by August L. Fietkau, Asst. Atty. Gen., New York City, for State of N.Y.

Axelrod & Warburgh by Paul E. Warburgh, Jr., and Zane and Rudofsky, by Edward S. Rudofsky and Jay L.T. Breakstone, New York City, for Jose A. Fonseca.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

These cases are before the court on the motions of the Republic of Colombia ("Colombia"), the United States, and the State of New York to dismiss Jose A. Fonseca as a party to the second action, and on the defendants' motion to dismiss the first action. For the reasons set forth below, the motions are hereby granted to the extent hereinafter indicated.

According to the pleadings, on or about June 9, 1978, Fonseca bought a ticket on Avianca Airlines to fly from Bogota, Colombia to Lima, Peru. When he arrived at the Bogota airport for his flight, Fonseca checked his baggage on Avianca for transport to Lima. However, Avianca delivered the baggage to New York, where it arrived at John F. Kennedy International Airport unaccompanied by Fonseca, who was waiting for it in Lima. When the suitcase was not claimed in New York, the United States Customs Service seized and opened it. Approximately $250,000 in U.S. currency was found inside the suitcase.

Acting through a New York attorney, Fonseca requested that the Customs Service return the money. When the request was denied, Fonseca commenced the first action (78–C–1907) to compel return of the money. The United States government served interrogatories on Fonseca through his local counsel. Before responding to the interrogatories, Fonseca moved for an order directing the government to return the suitcase and the money. Thereafter, acting pursuant to a request by the Superintendent of Exchange of Colombia (the Superintendent), the government moved for an order directing that the money be delivered to the Superintendent pursuant to 28 U.S.C. § 1782. After holding an evidentiary hearing, this court found that the Superintendent was a "tribunal" within the meaning of § 1782, ordered that the money be delivered to him, and dismissed Fonseca's suit. On appeal, the Second Circuit reversed this holding and remanded the case for further proceedings. *Fonseca v. Blumenthal,* 620 F.2d 322 (2d Cir.1980) (per curiam).

On October 29, 1981, the United States filed the second action (CV–81–3542) in interpleader to determine the owner of the suitcase and money. 28 U.S.C. § 1335. Fonseca, Colombia, and the State of New York filed claims to the money. Shortly after the second action was commenced, the United States served on Fonseca a second set of interrogatories in the first action.[1] Fonseca, the plaintiff in the first action, objected to the interrogatories essentially claiming that the questions were irrelevant; Fonseca did not make any claim of privilege in his objection. On February 4, 1982, this court entered an order directing Fonseca to respond to the interrogatories and to comply with Civil Rule 1 of the Eastern District of New York within 21 days.[2] Fonseca has never complied with this order.

---

1. The first set of interrogatories served on Fonseca by the government in 78–C–1907 was never answered.

2. Civil Rule 1 of the Eastern District of New York reads:

A party shall furnish to any other party, within five days after demand, a verified

On April 14, 1982, attorneys for Colombia served Fonseca's local counsel with interrogatories and a request for production of documents in the second action. Fonseca's answers to the interrogatories were filed on July 6, 1982. Prior to receipt of these answers, Colombia sent Fonseca's local counsel a notice of deposition and another request for production of documents. The deposition of Fonseca was to take place in New York City on June 28, 1982. Fonseca's counsel sought to have Fonseca deposed in Colombia, but counsel for Colombia refused. Fonseca failed to appear for his deposition and failed to supply the requested documents.

On July 27, 1982, Colombia moved to strike Fonseca's pleadings pursuant to Fed. R.Civ.P. 37(d) on the grounds that Fonseca failed to appear at his deposition and that he did not properly answer the interrogatories,[3] and moved for an order pursuant to Fed.R.Civ.P. 34(b) and 37(a) compelling inspection of the documents or for an order directing the deposition of Fonseca within 60 days and compelling proper answers to the interrogatories and production of the requested documents.

After hearing oral argument on Colombia's motion, this court entered an order on August 20, 1982, directing Fonseca to appear on October 5, 1982, in New York for a deposition and to respond fully to the interrogatories and produce the documents on or prior to September 13, 1982. Fonseca failed to comply with this court's order: he failed to appear for the deposition, he failed to supply any documents, and, instead of responding to the interrogatories, he filed an affidavit claiming that he believed that he may be a target of criminal investigations in the United States and Colombia and he therefore declined to make any further response to the interrogatories by invoking his Fifth Amendment right against self-incrimination.

On October 13, 1982, Colombia moved to strike Fonseca's pleadings and to enter default judgment against him. New York State and the United States joined in Colombia's motion. Oral argument on the motions was heard on November 10, 1982. After a thorough review of the entire record in these cases, this court now dismisses the first action and strikes Fonseca's pleadings and enters default judgment against him in the interpleader action. Colombia's motion is denied to the extent that it seeks to have Fonseca pay reasonable expenses and attorney's fees.

Fonseca argues first that because his motion in the first action to compel the government to return the money has never been opposed by the United States this court should grant the motion and order the money returned to him. At oral argument on November 10, 1982, however, the government clearly indicated its opposition to Fonseca's motion (Hearing Transcript, p. 11). Fonseca's contention also ignores the fact that the filing of the interpleader action by the government served, in effect, as the response to Fonseca's motion in the first action.

■ The first action was filed to determine Fonseca's right to the money. The interpleader action was intended to accomplish the same. The difference between the two actions is that the second action will determine the ownership of the money with finality by adjudicating the claims of all the parties to the currency. If Fonseca were to prevail in the second action, his claim to the money would be established as against the other claimants. If he were to win the first action, Fonseca would still face suits by the other claimants. A second action to deter-

---

statement setting forth his post office address and residence, and, if a corporation, the names, post office addresses and residences of its principal officers. In the case of an assigned claim, the statement shall include the post office address and residence of the original owner of the claim and of any assignee thereof. Upon non-compliance with the demand, the court, on *ex parte* applica-

tion, shall order the furnishing of the statement, and in a proper case, on motion, may direct that the proceedings on the part of the non-complying party be stayed, or make such other order as justice requires.

3. Fonseca's answers to the interrogatories will be discussed below at 698–699.

mine the claims of Colombia and New York State would waste judicial resources. In addition, a court could later determine that Colombia or New York State should be entitled to the money; if the United States has already paid the fund out to Fonseca, it could be subject to multiple liability. The avoidance of multiple suits and of multiple liability based on a specific, limited fund proffered by the plaintiff constitutes the basic purpose of the interpleader statute. *Libby, McNeill, and Libby v. City Nat. Bank,* 592 F.2d 504, 509 (9th Cir.1978); *Zellen v. Second New Haven Bank,* 454 F.Supp. 1359, 1365 (D.Conn. (1978); *Massachusetts Mut. Life Ins. Co. v. Central-Penn. Nat. Bank,* 362 F.Supp. 1398, 1401 (E.D.Pa. 1973).

Once an interpleader action has been commenced, "a district court may . . . enter its order restraining [the claimants] from . . . prosecuting any proceeding in any . . . United States court affecting the property . . . involved in the interpleader action . . . ." 28 U.S.C. § 2361. This section empowers a district court to insure that all claims to the fund involved be settled in the single interpleader action.

Because both actions have been pending before this court, it has not been necessary to enjoin the proceedings in the first action. But it is clear that Fonseca must win the interpleader action to succeed in the first action. If Fonseca loses in the interpleader action, then it would be improper to permit

the first action to proceed since it might render the government liable to Fonseca as well as the successful interpleader claimant. Thus, if Fonseca's claim in the second action is dismissed, his claim in the first action should also be dismissed as an "appropriate" method of enforcing the judgment against him in the interpleader action. 28 U.S.C. § 2361.

■ Therefore, even if the United States had never specifically opposed Fonseca's motion in the first action, the filing of the interpleader action was, in effect, a response to that motion. In fact, after the second action was commenced, Fonseca appears to have treated the first action as moot—his only filing in that action after the interpleader action was begun has been an objection to the government's interrogatories.[4]

■ Since Fonseca must succeed in the interpleader action in order to be entitled to the currency, this court's attention will be focused on the issues raised by the motions in that action. If Fonseca is dismissed as a claimant therein, then his motion in the first action must be denied and his claim therein must likewise be dismissed.[5]

The first argument made by Colombia[6] is that Fonseca's claim in the second action should be dismissed because of his failure to answer the interrogatories pursuant to an order of this court.

4. It should be noted that even before the government filed the interpleader action Fonseca appears to have lost interest in the first action: he did not renew his motion for an order to return the money; he failed to respond to a motion by Colombia to intervene which was mooted by the second action and Colombia's claim therein; he claims, however, to have filed his bill for costs of his appeal in *Fonseca v. Blumenthal,* 620 F.2d 322 (2d Cir. 1980), which would have been his only filing in the first action between remand and the start of the interpleader action. The record in this court does not contain the bill of costs, although the record on remand does contain a bill filed with the clerk of the Court of Appeals.

5. Because the outcome of the first action will be determined by the holding in the interpleader action, Fonseca's claim that the United

States may not oppose his motion in the first action because it failed to satisfy Fonseca's bill of costs for his appeal need not be addressed. This court moves however that the power to stay litigation or submissions pending payment of costs is discretionary, not mandatory as Fonseca claims. *See Matter of Hartford Textile Corp.,* 681 F.2d 895, 897 n. 1 (2d Cir.1982) (per curiam). The court notes further that Fonseca has never moved this court for an order directing the government to pay the costs, which amount to $1753.97. Additionally, neither the record nor the docket show that Fonseca has filed the claim for costs with this court (see note 4, *supra*).

6. Although the United States and New York State have joined in the motion, the court will refer only to Colombia as the moving party.

In its interrogatories filed on April 16, 1982, Colombia requested that Fonseca provide his residential addresses since 1975, information concerning his identification number and identity card issued by Colombia, information concerning any aliases Fonseca has used, and varied information concerning the events surrounding the shipment of the currency to the United States. Colombia also requested certain documents relating to Fonseca's identity and the shipment of the money. Several of the interrogatories (10, 11, 12, and 13) and two of the document requests (4 and 5) may have been designed to elicit information that might be incriminating.

In response to these demands, Fonseca provided a present address but objected to providing any other addresses as irrelevant; he objected to providing any information about his employment as irrelevant; he also refused to supply information about his identity card or identification number claiming it to be irrelevant. As far as the questions concerning receipt and shipment of the money by Fonseca, he declined to answer on relevancy grounds except to admit that he brought the money into Colombia from Venezuela.[7] Oddly, Fonseca admitted in response to interrogatories 12 and 13 that he never offered to sell the money to the Bank of Colombia in exchange for pesos and that he never applied for an exchange license pursuant to Colombian Decree-Law 444 of 1967.[8] Although the court has not been made aware of whether these omissions are criminal, these answers seem to be the most likely to incriminate Fonseca. Yet no objection was made nor

any privilege claimed for interrogatories 12 and 13. As to the document requests, Fonseca claimed either that the documents sought were irrelevant to his claim (1, 2, and 3) or that he did not possess the requested documents (4 and 5).

The court further notes that the form of the answers did not comply with Fed.R. Civ.P. 33(a) because they were neither made under oath nor signed by Fonseca. Thus, even the one attempt Fonseca made to comply with discovery was improper.

After receiving the answers, Colombia made its motion to strike Fonseca's pleadings for, *inter alia,* failing to answer the interrogatories properly. Fonseca claimed in response that the requested information was irrelevant to determining the issue of his entitlement to the money. Colombia charges that the person claiming the money is not, in fact, Jose A. Fonseca. It alleges that the "real" Jose A. Fonseca lost his identity card and that the claimant herein is an imposter using Fonseca's name. Colombia argues that the claimant must be prepared to submit to the interrogatories in order to help determine the validity of his claim. The United States, joining in the motion, maintains that it owes an affirmative duty to insure that the money is returned to the appropriate party.

Fonseca's response has been that the name under which he chooses to claim the money is not relevant. He claims that none of the other parties has disputed that it was Fonseca the claimant who in fact checked his suitcase with Avianca. So long as no party denies that he sent the money, he

---

**7.** Interrogatories 10 and 11 and Fonseca's answers thereto read:

■ Describe the manner in which the currency was transported into Colombia, including by whom, from where, and on what date the currency was transported into Colombia.
[Answer] The money was transported by defendant FONSECA on or about June 7, 1978 from Venezuela; otherwise, objection as to relevance.
■ Describe the purpose or purposes for which defendant Jose A. Fonseca obtained the currency.
[Answer] [Objection as to relevancy.]

**8.** Interrogatories 12 and 13 and Fonseca's answers thereto read:

■ Did defendant Jose A. Fonseca, or any person owning or possessing the currency ever offer to sell it to the Bank of the Republic of Colombia for Colombian pesos? If so, identify each and every such offer, and any documents relating thereto.
[Answer] No.
■ Did defendant Jose A. Fonseca ever apply for or obtain an exchange license pursuant to Decree-Law No. 444 of 1967 of the Republic of Colombia? If so, identify each and every such application and license.
[Answer] No.

maintains that he is entitled to it, and it makes no difference whether he calls himself Jose A. Fonseca or John Doe when he makes his claim.

He also claims that the other interrogatories were likewise irrelevant to the issue of whether the money is his and should be returned to him.

After hearing oral argument, the court disagreed with Fonseca's contentions but provided him another opportunity to comply with discovery and ordered him to answer the interrogatories properly and completely in light of the following considerations: first, the answers would assist the court in insuring that the proper result would eventually be reached; and, second, that the purpose of the discovery rules would be best served by Fonseca's full answers.[9]

The name or title any claimant chooses to use is not relevant to the issue of the validity of the claim asserted by that claimant; however, in refusing to answer the interrogatories, Fonseca has created a situation wherein the other claimants are unable to obtain sufficient facts to oppose Fonseca's claim effectively. If the claim cannot be opposed effectively by virtue of Fonseca's obstinacy, then the adversary process is undermined. Thus, the court ordered compliance with discovery to enable the other claimants to frame the issues and to brief the court fully in this matter.

■ The order was also fully consistent with the principles and goals that underlie the discovery provisions of the Federal Rules of Civil Procedure. The basic purpose of interrogatories is to discover facts under oath or learn where facts may be discovered and to narrow the issues in the case for trial. *Life Music, Inc. v. Broadcast Music, Inc.,* 41 F.R.D. 16, 26 (S.D.N.Y.1966); *United States v. 216 Bottles, More or Less, etc.,* 36 F.R.D. 695, 701 (E.D.N.Y.1965); *United States v. Grinnell Corp.,* 30 F.R.D. 358, 361 (D.R.I.1962). If a party objects to interrogatories, the burden falls on that party to convince the court that the interrogatories are improper and need not be

answered. *See Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292 (E.D.Pa.1980); *In re Folding Carton Antitrust Litigation,* 83 F.R.D. 260 (N.D.Ill.1979).

■ Fonseca has not met his burden in the instant case. The questions are clearly designed to establish whether the claimant Fonseca is entitled to the currency. The questions were therefore germane to the issue in the case, and were not burdensome. Given these factors and Fonseca's burden of persuasion, the court held that the questions were relevant and had to be answered.

■ This same analysis is applicable to document requests one, two, and three. If information contained in documents is relevant to the subject matter of the litigation, it is generally discoverable. *Weahkee v. Norton,* 621 F.2d 1080 (10th Cir.1980); *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453 (S.D.N.Y.1973). Since the court found these documents relevant, they had to be turned over absent a claim of privilege, which did not exist at the time of the order to produce the documents. Since no documents existed for requests four and five, none could be produced, and this court's order for production did not apply to these requests.

In summary, the court finds that the interrogatories asked relevant questions and that the documents sought were relevant. The court therefore reaffirms the validity of its underlying order to compel answers and the production of documents.

It was only after the court ordered him to comply in full to the discovery requests that Fonseca claimed that his answers might incriminate him and that he was possibly being investigated by American and Colombian authorities. Fonseca's claim of privilege under the Fifth Amendment was not made in any specific manner in response to any specific question; he invoked a blanket privilege and did not make it more specific. The court holds that by not invoking his Fifth Amendment privilege sooner, Fonseca waived the defense.

---

**9.** At the time of its decision the court had not yet been made aware of any claim of privilege.

We note first that the Fifth Amendment is not self-executing, and its privilege against self-incrimination can be waived if it is not asserted in a timely fashion. *Maness v. Meyers,* 419 U.S. 449, 466, 95 S.Ct. 584, 595, 42 L.Ed.2d 574 (1975); *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981). Rule 33 provides that an objection to interrogatories must be made within 30 days, and, in the absence of an extension or good cause, failure to meet this time limit constitutes a waiver of an objection, including the assertion of a privilege. *Davis v. Fendler,* 650 F.2d at 1160.

Not only was the claim of privilege waived, but it was improperly asserted as well. It is well-established that the Fifth Amendment may be invoked in a civil proceeding, *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972), and applies to interrogatories. *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). The validity of the assertion of the Fifth Amendment privilege "hinges not on the witness's say so alone: the trial judge must determine whether the witness's silence is justified." *National Acceptance Co. of America v. Bathalter,* 705 F.2d 924, 927 (7th Cir.1983); *Davis v. Fendler,* 650 F.2d at 1159.

Fonseca's attempt to invoke a blanket assertion of his Fifth Amendment privilege is not a proper invocation of the privilege. The Second Circuit has recently warned against accepting a blanket assertion of a Fifth Amendment claim. *United States v. Rodriguez,* 706 F.2d 31, 37 (2d Cir.1983) (Pierce, J.). Other courts have likewise refused to condone blanket assertions of the privilege. *See Davis v. Fendler, supra; Lyons v. Johnson,* 415 F.2d 540 (9th Cir. 1969); *see also Mertsching v. United States,* 547 F.Supp. 124 (D.Colo.1982); *compare Campbell v. Gerrans,* 592 F.2d 1054 (9th Cir.1979) (dismissal for failure to answer four of 34 interrogatories reversed). Blanket assertions of Fifth Amendment privilege are to be looked upon with disfavor because a trial judge cannot determine the validity of the claim unless it is invoked in response to specific questions from which the court can infer a particularized fear of self-incrimination. As the Second Circuit reminded us in *United States v. Rodriguez,* 706 F.2d at 36, the assertion of the Fifth Amendment must be "grounded on a reasonable fear of danger of prosecution." A blanket assertion can preclude a judge from deciding whether the fear of prosecution is "reasonable" or "realistic," *see Rodriguez,* 706 F.2d at 36–37, as is the court's duty. *Bathalter, supra.*

The blanket assertion of a privilege, however, may be proper if the threat of self-incrimination is clearly evident from the circumstances. If not evident, then the party asserting the privilege bears the burden of showing that his answers may incriminate him. "A proper assertion of a Fifth Amendment privilege requires, at a minimum, a good faith effort to provide the trial judge with sufficient information from which he can make an intelligent evaluation of the claim." *Davis v. Fendler,* 650 F.2d at 1160. In the case at bar, Fonseca has submitted no information other than his belief that he was a possible target of criminal investigations in the United States and Colombia. He has provided no evidence to support his belief. Even if there were some crime of which Fonseca might be accused in the United States, it does not appear to be one for which he could be extradited from Colombia. *See* 57 Stat. 824 (1943); 26 Stat. 1534 (1888). Additionally, if Fonseca fears prosecution for an extraditable offense such as embezzlement, larceny, or narcotics violations, Colombia would not be bound to deliver him up to the United States since he is a Colombian citizen. Article X, 26 Stat. 1534 (1888). The court finds that Fonseca has failed to carry his burden of showing that he might incriminate himself by his answers to the interrogatories. We find, instead, that Fonseca's blanket assertion of his Fifth Amendment privilege to the entire discovery request is improper. For these reasons, the court finds that Fonseca's claim of privilege is waived. *See Mertsch-*

*ing v. United States,* 547 F.Supp. 124 (D.Colo.1982).[10]

 Fonseca further asserts his fear that his answers to the interrogatories may incriminate him in a Colombian prosecution. It is an open question as to whether the Fifth Amendment privilege against self-incrimination may be invoked where the witness fears incrimination in a foreign country. *See Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 478–81, 92 S.Ct. 1670, 1675–76, 32 L.Ed.2d 234 (1972). The Second Circuit has recently set forth guidelines for evaluating such claims, and this court will weigh Fonseca's claims against the test established in *United States v. Flanagan,* 691 F.2d 116 (2d Cir.1982) and reaffirmed in *In re Gilboe,* 699 F.2d 71 (2d Cir.1983).

In *Flanagan,* 691 F.2d at 121, the Second Circuit held that when resolving the issue of the propriety of a claim of privilege against a foreign prosecution a trial court must "focus on such questions as whether there is an existing or potential foreign prosecution of [the witness]; what foreign charges could be filed against him; whether prosecution of them would be initiated or furthered by his testimony; whether any such charges would entitle the foreign jurisdiction to have him extradited from the United States; whether there is a likelihood that his testimony given here would be disclosed to the foreign government."

To begin with, there are no pending charges against Fonseca in Colombia or any other country apparent from the record. In fact, there is no evidence other than Fonseca's statement that he "may be" the target of an investigation. There is, in sum, no evidence at all that he is about to be charged with any crime. In addition, the questions in the interrogatories are not designed to secure evidence which might be incriminating. *See In re Gilboe,* 699 F.2d at 76. The questions that were possibly the most incriminating were answered before Fonseca's assertion of privilege.

It is also not clear what crimes Fonseca could be charged with. Although he has admitted violating Colombian Decree-Law 444 of 1967, it is not clear whether this violation is criminal. It is not obvious from the record what other crimes Fonseca might be accused of in Colombia. Because these possible charges are not evident to the court, the burden of showing possible incrimination must rest with Fonseca. *See Davis v. Fendler,* 650 F.2d at 1160. Because Fonseca has submitted nothing except his own conclusory statement to show possible harm, the court concludes that he has not met his burden. Because the court perceives no charges that might result from or be furthered by Fonseca's responses, the court concludes that the first three factors all weigh against Fonseca's assertion of privilege. The court does not address the other factors of the *Flanagan* test, since the court finds no possible harm to Fonseca from his responses. Thus, even if the court did not deem Fonseca's claim of privilege waived, an application of the *Flanagan* test to the instant facts also leads to this court's rejection of Fonseca's privilege claim as to a possible prosecution in Colombia.

 Having held that Fonseca waived his Fifth Amendment right against self-incrimination, and that, even if not waived, the assertion was improper, the court must determine an appropriate remedy. Accordingly, after considering the alternatives the court grants Colombia's motion to strike Fonseca's pleadings and enter default judgment against him. The court finds this extreme remedy warranted by Fonseca's continuous failure to comply with valid orders of this court. While his original objections may have been made in good faith, his belated attempt to invoke the Fifth Amendment strikes the court as being dilatory and in bad faith and appears to be an attempt to avoid the discovery process. Because Fonseca has responded to this court's orders with contempt, and because there is no ad-

---

**10.** Because of these findings, the court does not address the issue of whether, as a claimant in an interpleader action, Fonseca should be considered a plaintiff or defendant, and whether this makes any difference to his failure to comply with discovery orders. *See Mertsching v. United States,* 547 F.Supp. 124 (D.Colo.1982).

mission that he will begin to comply with this court's orders, the court finds that it has no choice but to dismiss his claim. No other result is recommended by Fonseca's behavior. Because the court is dismissing Fonseca's claim in interpleader, it must also dismiss his original suit against the government for the reasons discussed above.

In addition to dismissing Fonseca's claims for failure to comply with this court's order to answer the interrogatories and produce the documents requested, the court must also dismiss his claims on the ground of his unexcused failure to appear in New York City for a court-ordered deposition. The court did not consider the burden on Fonseca to be too great, since he would have had to come to the district for the eventual trial of this matter. Therefore, the court ordered Fonseca to New York for the deposition. Fonseca did not comply with this order.

Fonseca never raised any claim of privilege with respect to the deposition. His only objection was that it was inconvenient for him to come to New York. But the court took Fonseca's convenience into account when deciding where the deposition should be held, and decided that it would be best to have Fonseca come to New York. Having lost on this issue the first time it was before the court, Fonseca chose to ignore the order and continue to stand on his objection.

Because no valid excuse was given for Fonseca's failure to comply with this court's deposition order, the court will dismiss his claim in interpleader for this reason as well. This court finds that Fonseca has consistently ignored valid orders of this court to comply with the discovery requests.

For the foregoing reasons, the court grants the motion of the government in 78–C–1907, *Fonseca v. Regan,* and dismisses the action with prejudice, and grants the motion of Colombia, joined in by the United States and the State of New York, to strike Fonseca's pleadings and enter default judgment against him, thereby dismissing his claim in interpleader in CV–81–3542, *United States v. United States Currency.* The

motion by Colombia for fees and costs, however, is denied. Any outstanding motions that Fonseca has in either action are denied *pro forma.*

The remaining parties to the interpleader action, the United States, Colombia, and the State of New York are directed to appear before this court on Tuesday, September 13, 1983 at 10 o'clock a.m. for the next pre-trial conference.

So ordered.